868 P.2d 1037

**STATE of Arizona, Appellee,**

v.

**Manuel ROJAS, Appellant.**

**1 CA–CR 91–1800**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 23, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Monica D. Beerling, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James R. Rummage, Deputy Public Defender, Phoenix, for appellant.

## OPINION

CAMPBELL, Judge [1].

We hold in this opinion that the trial court abused its discretion when it denied a motion for mistrial based on the grounds that one of the jurors asked whether the judge would sentence right away after a verdict, and sent a sympathy note to the victims enclosing a twenty dollar bill, prior to jury deliberations. For retrial, we also conclude that the court properly admitted expert testimony regarding "child sexual abuse accommodation syndrome" and evidence of defendant's prior bad acts.

### I. Facts and Procedural History

By indictment, appellant Manuel John Rojas ("defendant") was charged with one count of child molestation, two counts of sexual misconduct with a minor, and one count of attempted child molestation. The jury found defendant guilty of count I, molestation of a child, a class two felony and dangerous crime against children; count II, sexual conduct with a minor, a class two felony and dangerous crime against children; count III, sexual conduct with a minor, a class two felony; and

---

1. The Honorable Colin F. Campbell, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to article 6, section 3 of the Arizona Constitution.

count IV, attempted molestation of a child, a class three felony and dangerous crime against children. The trial court sentenced defendant to consecutive terms, to be served in the following order, of seven years on count III, thirty years on count II, life imprisonment on count I, and ten years on count IV.

Defendant presents three claims on appeal: (1) that the court erred in denying his motion for a mistrial based on juror misconduct; (2) that the trial court erred in admitting expert testimony regarding "child sexual abuse accommodation syndrome"; and (3) that the court erred in admitting evidence of his prior bad acts. For the following reasons, we reverse and remand for a new trial on the juror misconduct issue. We affirm the remaining evidentiary issues in the event they reoccur at trial.

## II. Juror Misconduct

Defendant claims that the trial court abused its discretion by denying him a mistrial for juror misconduct and that the denial of his motion for a mistrial violated his right to an impartial jury under the Sixth Amendment to the United States Constitution and article 2, section 24 of the Arizona Constitution. We agree.

The facts surrounding the misconduct are, to say the least, unusual. The day before jury deliberations, the juror, while making a telephone call in the judge's chambers, asked the judge's secretary whether the court would sentence a defendant right away when a verdict returns or when a defendant is found guilty. The next day, while walking out to deliberate, the same juror handed the bailiff a note, with a $20 bill enclosed, to give to the two victims in the case, stating:

[victim's names]:

I think it took great courage to come to court and testify in front of a jury. I feel you will overcome this mess and go on to become excellent citizens of the Phoenix community.

I want to give this money as a small token of how proud I am of you two.

Good luck in the future.

Sincerely

A concerned juror.

The colloquy with the judge's secretary and the note were brought to the court's attention after deliberations began. Upon learning of these incidents, defendant moved for a mistrial and requested that the juror be immediately questioned. The judge denied the mistrial and declined to interview the juror until the jury returned a verdict. After the jury returned guilty verdicts, the judge questioned the jurors as follows:

The Court: This is an unusual proceeding, but let me just explain why I did that, and where we are headed. At the conclusion of the case, Judy Palmer, my bailiff, handed me a note and said one of the juror, as it turns out, Mr. H (the juror's name is redacted) had given her a note addressed to the minor victims in the case, the children....

I instructed Judy at that point to give it to the county attorney.... The note expressed Mr—I won't read it at this time, but it expressed admiration, I might say, on Mr. H's part, for the fact that they had been under, at best, difficult circumstances, and that they had testified and he wished, in essence, wished them well and he included a $20 bill.

That was, I am sure, a nice thought on Mr. H's part. The problem that thereupon caused was as follows: A motion was made for a mistrial. At that point it was denied by me. I said I would wait until the jury returned, then I would question the jury. At that point, there was discussion as to whether or not I should bring Mr. H into my chambers in the presence of both attorneys, place him under oath and question him regarding the note.

I felt that it was better, under the circumstances, not to do that, but to allow you to continue with your deliberations and at the end, to bring all of you in and ask you all a few questions.

While Mr. H, while I did fairly characterize the note, I didn't go ahead and say word for word what was said. In essence it expressed your appreciation for the difficult task that these young women had in coming forward in this courtroom, telling

the story, telling the things that happened to them. Right?

Mr. H: That's correct.

The Court: You expressed sympathy and wished them well in the future.

Mr. H: The reason I did that, your honor, is because I see a lot of unfortunate families, less fortunate than myself. I wanted to, in some way, pass along my feelings toward those not as fortunate as myself.

The Court: Did you, when you wrote that, when you wrote that note at that time, had you made up your mind as to the guilty of the defendant?

Mr. H: No, I had not. That's why I handed it to the bailiff before we deliberated. Whether the verdict was guilty or not guilty, I wanted these people to have my comments plus my small token of appreciation.

. . . .

The Court: You were willing to sit down to deliberate with your fellow jurors, to review the evidence and the law before you reached a conclusion as to guilty or not guilty?

Mr. H: That's correct.

The remaining jurors assured the court that they knew nothing of Mr. H's note while deliberating. The trial court denied defendant's new motion for a mistrial.

In their briefs, the parties frame the issue of juror misconduct in terms of whether the juror formed a fixed opinion about defendant's guilt before the case was submitted to the jury for decision. We are mindful, however, that Rule 18.4, Arizona Rules of Criminal Procedure, replaced a catalogue of fifteen grounds for challenging jurors in the 1956 criminal rules, with the general provision allowing a party to challenge a juror for cause at any time if there is reasonable ground to believe that a juror cannot render a fair and impartial verdict. "The omission of the list is intended to direct the attention of attorneys and judges to the essential question—whether a juror can try a case fairly." Ariz. R.Crim.P. 18.4(b) cmt.

■ Whether the juror in this case could try the case fairly rests upon an analysis of the misconduct: the juror's question as to when the judge would sentence; the sympathy note to the victims; and the giving of a twenty dollar bill to the victims. Inasmuch as the only issue at trial appeared to be the truthfulness of the complaining witnesses, doubt that the juror had reserved judgment as to the defendant's guilt is unavoidable.

The juror's conduct casts into doubt more than whether he had a fixed opinion. The fundamental question is whether the juror could judge the case fairly. The giving of a sympathy note and money to victim witnesses in a case prior to jury deliberations also calls into question the juror's impartiality: It displays favoritism.

Having framed the issue, we turn to the law governing juror misconduct. The cases are legion that a defendant is entitled to a fair, impartial and unbiased jury. *See, e.g., State v. Smith,* 146 Ariz. 325, 327, 705 P.2d 1376, 1378 (App.1985); *State v. Eisenlord,* 137 Ariz. 385, 392, 670 P.2d 1209, 1216 (App. 1983); *State v. Davis,* 137 Ariz. 551, 558, 672 P.2d 480, 487 (App.1983). Our research has not disclosed, however, a similar reported case in which a juror not only makes a comment displaying an opinion, but also attempts to give the victim witnesses money along with a sympathy note prior to jury deliberations.

There is a wider body of case law addressing whether a juror has a fixed opinion on the case. One traditional component of fairness is that a juror remain open-minded and not form a fixed opinion upon the case until the jury commences deliberations. Thus, in preliminary instructions in this case, the trial court instructed the jurors not to form or express an opinion on the merits of the case as follows:

Do not form an opinion as to what the ultimate verdict will be until you have heard all the evidence, have heard the arguments presented by the attorneys and have the instructions of law which I will give you at the end of the case.

It is only when you retire to begin your deliberations that you should form an opinion as to what your individual verdict will be.

This is a common preliminary instruction. *See State v. Drake,* 31 N.C.App. 187, 229 S.E.2d 51 (1976). The reasons for the instruction and admonition are apparent. If a juror has formed a fixed opinion on a defendant's guilt prior to deliberations, the juror may stand by the opinion even if contradicted by subsequent evidence. A juror may also form premature conclusions without the benefit of final arguments, instructions of law, and jury deliberations. *Cf. Commonwealth v. Kerpan,* 508 Pa. 418, 498 A.2d 829, 831 (1985).

Arizona law on this issue arises in the context of jury selection, however, as opposed to the expression of an opinion during trial. Our supreme court has held that only a "fixed, settled and abiding conviction as to the guilt or innocence of the defendant" is disqualifying. *State v. Narten,* 99 Ariz. 116, 122, 407 P.2d 81, 85 (1965). Whether an expression of opinion is made during voir dire or during the actual trial, however, the inquiry for the court is the same: did the juror have a fixed opinion about the defendant's guilt? As stated by the Alabama Court of Appeals:

> Before a verdict will be vitiated ... it must first be determined whether the [juror's] remark evidence a fixed opinion of the juror or whether it merely represented the predilection of the juror at that particular time. It is a fundamental aspect of human nature that where two or more alternative courses of action exist, an individual forced to chose between them will be more predisposed toward one than the other.... Even a juror who has given his opinion as to the guilt or innocence of the accused before trial is completed may nevertheless continue to hear the case so long as he keeps an open mind and retains a willingness to alter his opinion after hearing all the evidence.

*Hartley v. State,* 516 So.2d 802, 804 (Ala. Crim.App.1986) (citations omitted).

Noting that the decision whether a juror has a fixed opinion is made during voir dire based upon an observation of the juror's demeanor and tenor of a juror's answers, the supreme court has stated "we have long held that a ruling upon a motion challenging a juror for bias or partiality is left largely within the sound discretion of the trial court whose decision will not be overturned in the absence of a clear showing of an abuse of that discretion." *Narten,* 99 Ariz. at 122, 407 P.2d at 85. *See also State v. Cook,* 170 Ariz. 40, 54, 821 P.2d 731, 745 (1991); *State v. Comer,* 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990); *State v. Clabourne,* 142 Ariz. 335, 344, 690 P.2d 54, 63 (1984); *State v. Clayton,* 109 Ariz. 587, 592, 514 P.2d 720, 725 (1973).

We conclude that the record in this case shows a clear abuse of discretion. We hold that the record of the investigation conducted by the trial court after the misconduct was revealed is insufficient to support the conclusion that the juror was fair and impartial.

The juror's comment about sentencing, the note and the money were brought to the judge's attention immediately upon commencement of jury deliberations. The court, over objection, did not stop the deliberations, question the juror, and make a determination whether deliberations could then proceed. *Cf. State v. Cook,* 170 Ariz. at 55, 821 P.2d at 746 ("In most circumstances, the proper procedure upon becoming aware of possible juror misconduct is to inform the court as soon as possible and let the court conduct whatever investigation it deems warranted."). Rather, the court waited until the jury returned its verdict.

Although many factual matters can be reconstructed and retroactively determined, the trial court's colloquy with the juror in this case was insufficient to cure the revealed juror misconduct. Before questioning the particular juror, the judge explained to the entire jury that defendant had filed a motion for a mistrial and that he had denied it. By explaining to the jury before questioning the individual juror that the trial court may have to declare a mistrial, the judge implicitly invited that the juror say nothing that would prejudice the deliberations.

Then, through a series of leading questions, the judge characterized the misconduct as an expression of sympathy and elicited the statement from the juror that he had not made up his mind as to the defendant's guilt prior to deliberation. The court failed to

question the juror about his question about when sentencing would take place.

From this discussion, the trial court could not fairly conclude whether juror misconduct had a prejudicial effect on the verdict. The juror's statement of impartiality did not emanate from him but was suggested by leading questions. Moreover, the juror's elicited statement of impartiality prior to deliberations is on its face irreconcilable with what he did. The juror gave the victims money and a note. The juror's note praises the victim-witnesses' "courage" and states they will "overcome this mess." The juror stated he acted on a belief that the victims were "unfortunate." Other than the crime itself, however, the record discloses no other unfortunate circumstances that befell the victims.

■ "When events occur that cast an irrevocable cloud over the jury's fairness and impartiality, it is far better to grant the motion for mistrial and start over again." *State v. Reynolds*, 11 Ariz.App. 532, 535, 466 P.2d 405, 408 (1970). The motion for mistrial should have been granted in this case. Therefore, we reverse and remand for a new trial.

### III. Admission of Expert Testimony

■ Defendant argues that the trial court erred in admitting into evidence the expert testimony of Dr. Steven Gray, a psychologist specializing in the assessment and treatment of sexual offenders and victims of sexual assault. The admission of expert testimony is within the sound discretion of the trial court, and we will not disturb that decision on appeal absent a clear abuse of discretion. *State v. Mincey*, 141 Ariz. 425, 441, 687 P.2d 1180, 1196, *cert. denied*, 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984).

The Arizona Supreme Court has held that, under Rules 702, 703, and 403 of the Arizona Rules of Evidence, expert testimony must "(1) come from a qualified expert, (2) be reliable, (3) aid the trier of fact in evaluating and understanding matters not within their common experience, and (4) have probative value that outweighs its prejudicial effect." *State v. Moran*, 151 Ariz. 378, 380–81, 728 P.2d 248, 250–51 (1986) (citing *State v. Chap-*

*ple*, 135 Ariz. 281, 291, 660 P.2d 1208, 1218 (1983)). Defendant argues that Dr. Gray's testimony does not satisfy the last two requirements.

■ The Supreme Court has stated, however, that expert testimony that helps jurors evaluate victims' credibility and explains why victims of sexual abuse may behave inconsistently is admissible. *Id.; State v. Lindsey*, 149 Ariz. 472, 476, 720 P.2d 73, 77 (1986). Such generalized testimony, while injurious to a defendant's case, is not unfairly prejudicial. *Moran*, 151 Ariz. at 384, 728 P.2d at 254. "[I]t merely informs jurors that commonly held assumptions are not necessarily accurate and allows them to fairly judge credibility." *Id.* Moreover, sexual abuse involving children is still a somewhat unique phenomenon that the general public does not experience or understand. *Id.* at 382, 728 P.2d at 252.

■ Nevertheless, the supreme court does not allow testimony as to the expert's "opinion of the accuracy, reliability or credibility of a particular witness in the case being tried," or as to a witness similar to the one involved in the current case. *Lindsey*, 149 Ariz. at 475, 720 P.2d at 76. An expert may not substitute himself for the jury by giving advice as to the ultimate issues in the case. *Id.*

The State proffered Dr. Gray's testimony only to explain to the jury why victims of sexual abuse, especially children, are reticent in reporting abuse and have difficulty remembering the details of the abuse, such as when and how often it occurred. He did not testify as to the particular characteristics of the two victims in this case or pass judgment as to whether the victims in this case were credible. In fact, Dr. Gray never met the children or the defendant in this case nor reviewed any of the videotapes of the victims. For these reasons, the court properly admitted the expert testimony.

### IV. Admission of Prior Bad Acts

■ Defendant next contends that the trial court erred in admitting, over his objections, evidence of his prior bad acts under Rule 404(b) of the Arizona Rules of Evi-

dence. Defendant summarily claims that the State failed to establish adequately that the prior bad acts occurred near in time to the charged offenses. He also claims, more specifically, that the testimony of him pulling down and cutting the underwear of the two victims while they were sleeping and taking one of the victims to a nearby vacant house to feel her chest were not similar in nature to the charged offenses.[2] We find no abuse of discretion in the trial court's decision, however. *See State v. Huffman,* 169 Ariz. 465, 467, 820 P.2d 329, 331 (App.1991).

Generally, prior bad acts are admissible to show a plan, scheme, device, or modus operandi, but not to show that the defendant has a propensity to commit such bad acts. *State v. McFarlin,* 110 Ariz. 225, 228, 517 P.2d 87, 90 (1973); Ariz.R.Evid. 404(b). An exception exists where the "offense charged involves the element of abnormal sex acts such as sodomy [and] child molesting...." *Id.* In such cases, "there is sufficient basis to accept proof of similar acts near in time to the offense charged as evidence of the accused's propensity to commit such perverted acts." *Id.*

If the prior incidents are not similar in nature or near in time, expert testimony is needed to establish that the prior incidents show a continuing emotional propensity to commit the charged act. *State v. Treadaway,* 116 Ariz. 163, 167, 568 P.2d 1061, 1065 (1977). Expert testimony is not needed, and remoteness is not an issue, however, when similar molestations occur incessantly over a long period of time against the same victim. *State v. Spence,* 146 Ariz. 142, 144, 704 P.2d 272, 274 (App.1985). These similar molestations against the same victims are also admissible to show a defendant's lewd disposition and intent toward the victims. *State v. Garner,* 116 Ariz. 443, 447, 569 P.2d 1341, 1345 (1977) (citing *People v. Sylvia,* 54 Cal.2d 115, 4 Cal.Rptr. 509, 513, 351 P.2d 781, 785 (1960)).

A discrepancy exists between the record and the briefs as to what the State was using defendant's prior bad acts to prove. At a pretrial hearing, the State indicated that it would use evidence of defendant's prior bad acts to prove motive, plan, or scheme. In the briefs, however, the parties argue whether the prior bad acts are admissible to show a propensity to commit such acts. We will uphold the trial court's decision if it is correct for any reason. *State v. Perez,* 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984).

Some of defendant's prior bad acts are admissible to show that defendant has a propensity to engage in improper sexual acts with children. *See Spence,* 146 Ariz. at 144,, 704 P.2d at 274. According to the older victim, defendant sexually abused her continually over a seven year period. In addition to the charged acts of sexual conduct with a minor, arising from claims that defendant had sexual intercourse with the older victim, she testified that he had intercourse with her on at least one prior occasion in the shack next door, that he would frequently touch her inappropriately at home and at the shack, and that she would frequently awake to find her underwear either pulled down or cut with scissors and defendant standing over her.

The younger child testified that defendant's inappropriate touching began in 1990 and continued until his arrest for child molestation, which arose from a claim that defendant touched her vagina. She too remembered awakening to find defendant standing over her and her underwear pulled down or cut.

Although these prior bad acts are not replicas of the acts for which defendant is charged, they are similar enough, and occurred frequently enough against the same victims, to be admissible to show a propensity for such bad behavior. *See State v. Lopez,* 170 Ariz. 112, 117, 822 P.2d 465, 470 (App. 1991). These acts are also admissible to show that defendant had an unnatural attitude and lewd disposition toward these two

---

2. Other than these specific prior bad acts, defendant does not state with particularity in his brief what other prior bad acts the court erred in allowing. Moreover, defendant did not object at trial to the admission of some of the prior bad acts. Nevertheless, we analyze all the prior bad acts the trial court allowed because this issue will surface again on remand.

children. *See Garner*, 116 Ariz. at 447, 569 P.2d at 1345.

The remaining prior bad acts of defendant are admissible to show a plan or scheme to engage in aberrant sexual behavior. Ariz. R.Evid. 404(b); *see State v. Finley*, 108 Ariz. 420, 421, 501 P.2d 4, 5 (1972); *State v. Van Winkle*, 106 Ariz. 481, 483, 478 P.2d 105, 107 (1970). The younger child testified that defendant offered her 40 cents to have sexual intercourse with him. Both victims also testified that defendant would threaten them to keep quiet about the molestations. This was all part of his plan to continue molesting them without being caught.

### V. Conclusion

Because the trial court erred in denying defendant's motion for a mistrial, we reverse and remand for a new trial. We affirm, however, the trial court's admission of Dr. Gray's testimony about child sexual abuse accommodation syndrome and evidence of defendant's prior bad acts under Rule 404(b) of the Arizona Rules of Evidence.

LANKFORD, P.J., and EHRLICH, J., concur.