David Paul SANDERSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2007–SC–000537–MR.

Supreme Court of Kentucky.

May 21, 2009.

As Modified on Denial of Rehearing Oct. 1, 2009.

Mark P. Bryant, Emily M.W. Roark, Bryant Law Center, Bryant Shannon Roark, Paducah, KY, for appellant.

Jack Conway, Attorney General, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, for appellee.

Opinion of the Court by Justice NOBLE.

After a jury trial, Appellant was convicted of two counts of Second–Degree Sodomy and three counts of First–Degree Sexual Abuse, and was sentenced to thirty-five years in prison and five years of conditional discharge. He raises five claims of error on appeal. Because Appellant's Child Sexual Abuse Accommodation Syndrome claim constitutes reversible error, his conviction is reversed and the case is remanded for a new trial. However, because other errors are likely to recur on retrial, they are also addressed.

## I. BACKGROUND

Appellant met Mendy Terrell and her daughter, B.T., in the late 1990s and he married Mendy in December 2000. Appellant and B.T. appeared to have a close relationship. They moved into Appellant's house, and Appellant built a garage on the property where he could watch television and play poker with friends.

B.T. testified that after moving into Appellant's house, he sexually abused her on a weekly basis for six years, as much as two to three times per week while Mendy was at work or sleeping. He told B.T. that he would hurt her if she ever said anything about the abuse, which took place in the garage until the three of them moved to another house. At the new house, the abuse took place in the garage, in B.T.'s room, and in Mendy's room.

Several years after her marriage to Appellant, Mendy became pregnant. They began experiencing marital problems after she gave birth to the child, and a divorce action was filed on January 6, 2006. Appellant moved out of the house on February 25, 2006, but allegedly continued to abuse B.T. until about a week before he left.

About two months after Appellant left, the mother of a child who had spent the night with B.T. several years earlier told Mendy that when her daughter spent the night there, she watched a pornographic movie with B.T. and Appellant. According to B.T.'s friend, B.T. instigated the viewing. When Mendy first confronted B.T., she denied that it happened. Mendy then called Appellant, and told him that she knew about the pornographic movie he had watched with the girls. B.T. overheard the last part of the conversation and left, but later confessed to having watched the movie and told Mendy about the abuse that had taken place.

Appellant was indicted, convicted by a jury, and sentenced to thirty-five years in prison. His appeal to this Court, therefore, is a matter of right. Ky. Const. § 110(2)(b).

## II. ANALYSIS

### A. *Compliance with CR 76.12.*

■ The Commonwealth contends that Appellant's brief should be stricken for failure to comply with CR 76.12(4)(c)(v), which requires the brief to refer to the point in the record where each error was preserved. However, a careful review of Appellant's brief reveals that all but one alleged error was preserved or argued to be palpable. Therefore, Appellant has in fact substantially complied with the provisions of CR 76.12, that issue can be determined from the record, and this Court will exercise its discretion not to strike the brief. *Simmons v. Commonwealth,* 232 S.W.3d 531, 533 (Ky.App.2007) ("While [Appellant's] brief did not fully comply with [CR 76.12(4)(c)(v)], dismissal for failure to comply with the provisions of CR 76.12 is discretionary rather than mandatory."); *Baker v. Campbell County Bd. of Ed.,* 180 S.W.3d 479, 482 (Ky.App.2005)

("[D]ismissal based upon a failure to comply with CR 76.12 is not automatic").

### B. *Testimony Related to Child Sexual Abuse Accommodation Syndrome.*

■ Appellant claims the trial court improperly admitted testimony about Child Sexual Abuse Accommodation Syndrome (CSAAS) from Mendy, Brian Terrell (B.T.'s father), and Lori Brown, a clinical psychologist. Though Mendy and Terrell both testified about B.T.'s physical and psychological "symptoms," the most damaging testimony came from Brown, a clinical psychologist who counseled B.T. and gave testimony that B.T.'s addition of new allegations of sexual abuse is normal.

■ Although Appellant objected three separate times to Brown's testimony during the Commonwealth's case-in-chief, the Commonwealth contends this issue is improperly preserved · for appellate review. Indeed, it does not appear that Appellant specifically used the term CSAAS in his objections. However, we reject the Commonwealth's contention that Appellant is presenting a new theory of relief on appeal, having conceded the admissibility of Brown's testimony. To the contrary, Appellant objected first to "any" of Brown's testimony before she began testifying and objected again two more times during her testimony. These three objections adequately informed the trial court of the patent inadmissibility of Brown's CSASS–related testimony. *Hardin v. Commonwealth,* 428 S.W.2d 224, 226 (Ky.1968) ("While the objections were not sharply to the point we think they adequately alerted the trial judge to the proposition . . . ."). Appellant repeatedly raised hearsay as a basis for his objections; and CSAAS testimony is inadmissible, at least in part, because it is hearsay. *Hellstrom v. Commonwealth,* 825 S.W.2d 612, 614 (Ky.1992) ("Mr. Veltkamp listed the symptoms but

refrained from classifying them directly as the 'child sexual abuse syndrome.' Avoiding the term 'syndrome' does not transform inadmissible hearsay into reliable scientific evidence.") We conclude that Appellant's repeated objections, although not precisely articulated, were sufficient to preserve this issue for our review. It should also be noted that Sanderson's convictions are being reversed on another independent ground, making this preservation issue largely irrelevant.

In *Kurtz v. Commonwealth*, 172 S.W.3d 409 (Ky.2005), this Court quoted the basic rule against CSAAS testimony:

> [W]here a victim had delayed reporting of abuse, we held improper the testimony of a seasoned child sex abuse investigator stating that it was common, in her experience, for sexually abused victims to delay reporting of the abuse.... We held that "a party cannot introduce evidence of the habit of a class of individuals either to prove that another member of the class acted the same way under similar circumstances or to prove that the person was a member of that class *because* he/she acted the same way under similar circumstances."

*Id.* at 414 (quoting *Miller v. Commonwealth*, 77 S.W.3d 566, 571–72 (Ky.2002)).

In *Hellstrom v. Commonwealth*, 825 S.W.2d 612 (Ky.1992), this Court reversed a conviction based on testimony similar to the testimony in this case. In *Hellstrom*, the director of the Child Abuse Center at the University of Kentucky Medical Center (who had a Masters degree in clinical social work) testified that " 'delayed disclosure' is common in these types of cases." *Id.* at 613. The Court noted that "[b]oth sides recognize that we have reversed a number of cases because of trial error in permitting the use of testimony regarding the so-called 'child abuse accommodation syndrome' to bolster the prosecution's

case." *Id.* Further, it does not matter that the social worker "listed the symptoms but refrained from classifying them directly as the 'child sexual abuse syndrome.' Avoiding the term 'syndrome' does not transform inadmissible hearsay into reliable scientific evidence." *Id.* at 614.

In *Newkirk v. Commonwealth*, 937 S.W.2d 690 (Ky.1996), this Court applied the rule against CSAAS testimony to experts. *Newkirk* first noted that "[i]n an unbroken line of decisions ... this Court has repeatedly expressed its distrust of expert testimony which purported to determine criminal conduct based on a perceived psychological syndrome." *Id.* at 690–91. The multiple rationales for the specific rule against CSAAS testimony include "the lack of diagnostic reliability, the lack of general acceptance within the discipline from which such testimony emanates, and the overwhelmingly persuasive nature of such testimony effectively dominating the decision-making process, uniquely the function of the jury." *Id.* at 691. *Newkirk* contains a lengthy discussion of CSAAS cases, and it concludes:

> [T]he cases demonstrate unmistakably that this Court has not accepted the view that the CSAAS or any of its components has attained general acceptance in the scientific community justifying its admission into evidence to prove sexual abuse or the identity of the perpetrator. Moreover, such evidence has been rejected on grounds that it lacks relevancy for failure to make the existence of any fact of consequence more probable or less probable than it would have been without the evidence. KRE 401.

*Id.* at 693.

This Court further noted that even if it were to " 'become accepted by the scientific community that a child who had been sexually abused is likely to develop certain symptoms or personality traits, there

would remain the question of whether other children who had not been similarly abused might also develop the same symptoms or traits.' " *Id.* (quoting *Lantrip v. Commonwealth*, 713 S.W.2d 816, 817 (Ky. 1986)). And finally, this Court "expressed grave concern that the expert may invade the province of the jury by unduly influencing its assessment of credibility." *Id.* "This Court has previously stated there is no such thing as expertise in the credibility of children." *Id.* at 694. This Court has "embraced the view that mental health professionals are not experts at discerning the truth; they are trained to accept facts provided by their patients without critical examination of those facts." *Id.*

In this case, Brown testified that it is normal for child victims of sexual abuse, like B.T., to add details about their abuse after they have been in counseling for an extended period of time and to appear happy in their outward life and be able to excel in their extracurricular activities and make good grades. The Commonwealth even asked whether what Brown described as a child's attempt to disconnect from such abuse is the reason sexually- abused girls become prostitutes.

Here, the testimony in the Commonwealth's case-in-chief that sexually- abused children, like B.T., commonly add details over time through counseling is analogous to the situation in *Miller*, where this Court held testimony that sexually abused victims commonly delay reporting of their abuse to be reversible error. *Miller*, 77 S.W.3d at 577. In essence, victims are delaying their reporting of some of their abuse when they later add details. In addition, when Brown was recalled in the Commonwealth's rebuttal, she went even further in identifying generic characteristics of child sex abuse victims by describing them as outwardly appearing happy.

This is the type of testimony this Court feared in *Newkirk;* this was testimony where there " 'remain[s] the question of whether other children who had not been similarly abused might also develop the same symptoms or traits.' " *Newkirk*, 937 S.W.2d at 691–92 (quoting *Lantrip*, 713 S.W.2d at 817). Finally, the Commonwealth even went so far as to ask whether these "symptoms" are what cause sexually abused children to become prostitutes.

Brown's "expert" testimony in this case, coupled with the Commonwealth's speculation about the creation of prostitutes, are the exact type of generic and unreliable evidence this Court has repeatedly held to be reversible error. Therefore, this case must be reversed for a new trial because of the admission of CSAAS testimony against Appellant.

### C.   *Remaining Issues.*

1.   *Statutory   Maximum   Sentence   for   Class C Felonies and Retroactive Application of Amendment to Conditional Discharge Statute.*

"Because the judgment has been reversed for the foregoing reasons, we will address only those additional assignments of error that are likely to recur upon retrial." *Bell v. Commonwealth*, 245 S.W.3d 738, 743 (Ky.2008); *Terry v. Commonwealth*, 153 S.W.3d 794, 797 (Ky.2005); *Springer v. Commonwealth*, 998 S.W.2d 439, 445 (Ky.1999).

Appellant is correct that under KRS 532.110(1)(c) and KRS 532.080(6)(b), he could only receive a maximum sentence of twenty years, not the thirty-five years to which he was sentenced. Appellant was convicted of two counts of Second–Degree Sodomy[1] and three counts of First–De-

---

1.   Second–Degree Sodomy is a Class C felony.     KRS 510.080(2).

gree Sexual Abuse.[2]

KRS 532.110(1)(c) states, "The aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crimes for which any of the sentences is imposed...." The highest class of crime for which Appellant was convicted was Second–Degree Sodomy, a Class C felony. In *Gibbs v. Commonwealth*, 208 S.W.3d 848, 855 (Ky.2006), this Court held that where "[t]he highest degree of felony conviction that Appellant received was a Class C felony ... the longest aggregate sentence Appellant could have received was the maximum length authorized for a Class C felony under the Persistent Felony Offender statute: KRS 532.080." KRS 532.080(6)(b) states, "If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be ... more than twenty (20) years." Therefore, even though Appellant's conviction is reversed, if he is convicted of the same felonies after another trial, his maximum sentence cannot exceed twenty years' imprisonment.

In addition, Appellant was sentenced to five years of conditional discharge, although the version of KRS 532.043 in effect at the time these offenses were allegedly committed (prior to July 2006) only allowed for a conditional discharge of three years. The situation here is on point with *Purvis v. Commonwealth*, 14 S.W.3d 21 (Ky.2000), where a prior amendment of KRS 532.043 increased the maximum length of conditional discharge. In *Purvis*, this Court held that the amendment disadvantaged the Appellant in that

case and that its retroactive application was an *ex post facto* law and, thus unconstitutional. *Id.* at 24. The situation here is identical. Therefore, Appellant's sentence to conditional discharge could not exceed three years, the statutory maximum at the time the alleged offenses took place.

The Commonwealth concedes the maximum possible sentence in this case was twenty years' imprisonment and three years' conditional discharge, but it argues that the Appellant did not make the sentencing hearing part of the record. Regardless of whether the sentencing hearing was made part of the record, this Court has a list of Appellant's convictions before it and can apply the statutory maximum sentence as a matter of law. If Appellant is convicted of the same offenses after another trial, his maximum possible sentence will be twenty years' imprisonment and three years' conditional discharge.

### 2. *Social Worker's Hearsay and Ultimate Issue Testimony.*

Appellant claims that much of the testimony of Carla Hyde, a social worker, was inadmissible hearsay because Hyde testified primarily about B.T.'s statements to her. Appellant also claims that Hyde testified about B.T.'s credibility, an ultimate fact to be decided by the jury.

Hyde testified about many things B.T. told her. Hyde testified that B.T. told her that Appellant touched her in her private areas, that Appellant showed her pornographic movies, that she would be outside playing when Appellant would call her into the garage to touch her under and on top of her clothes; that she and Appellant would lick each other; that Appellant would play with himself and stuff would

---

**2.** First–Degree Sexual Abuse is a Class D felony. KRS 510.110(2).

come out; and that Appellant told her that if she did not do any of those things, he would hurt her. In addition, Hyde testified about the credibility of B.T. when she said B.T. "seemed believable"; and she was "appropriately nervous and scared."

This Court "has continuously held that the hearsay testimony of social workers is inadmissible and constitutes reversible error because it unfairly bolsters the testimony of the alleged victim." *Smith v. Commonwealth,* 920 S.W.2d 514, 516 (Ky. 1995). "There is no recognized exception to the hearsay rule for social workers or the results of their investigations.'" *Sharp v. Commonwealth,* 849 S.W.2d 542, 546 (Ky.1993) (*quoting Souder v. Commonwealth,* 719 S.W.2d 730, 734 (Ky.1986), *overruled on other grounds by B.B. v. Commonwealth,* 226 S.W.3d 47 (Ky.2007)). As was the case in *Sharp,* Hyde's testimony "extensively repeated the [child's] out-of-court statements" and it also "contains extensive conclusions as to the meaning of the [child's] acts and statements." *Sharp,* 849 S.W.2d at 545. Therefore, this case fits within the established rule that the hearsay testimony of social workers is inadmissible and constitutes reversible error. On retrial, a social worker cannot testify about B.T.'s statements made to her and her conclusions on the ultimate issue of B.T.'s credibility.

### III. *Conclusion.*

In conclusion, the trial court committed reversible error by admitting propensity testimony, a key reason for the rule against Child Sexual Abuse Accommodation Syndrome testimony.

Because Appellant has raised other issues that are likely to recur upon retrial, these issues have also been addressed. The maximum sentence for the felony convictions in this case (the highest class of which was a Class C felony) was twenty years' imprisonment and three years' conditional discharge (under the statute in effect at the time the offenses allegedly took place). Also, the social worker improperly testified as to B.T.'s hearsay statements to her; and she improperly testified about her ultimate opinion on B.T.'s credibility.

Therefore, the conviction and judgment of the Graves Circuit Court is reversed; and the case is remanded for a new trial.

MINTON, C.J.; CUNNINGHAM, SCHRODER and VENTERS, JJ., concur.

ABRAMSON, J., concurs in result only by separate opinion.

SCOTT, J., concurs, in part, and dissents, in part, by separate opinion.

ABRAMSON, Justice, Concurring in Result Only:

I concur in result only. Justice Scott raises an important question. The time is ripe to reconsider our position on CSAAS and whether any refinement is appropriate.

SCOTT, Justice, Concurring in Part and Dissenting in Part:

Although I concur with the majority's analysis and resolution of the other issues, I respectfully dissent from its view of certain elements of evidence often referred to as the Child Sexual Abuse Accommodation Syndrome (CSAAS), which provide explanations for the otherwise inconsistent conduct of abused children and, thus properly assists the jury in making determinations as to whether such inconsistent conduct is an indicator of untruthfulness or is conduct commonly experienced with abused children. I speak, here, of delayed reporting and recantation, as well as their presentment with demeanors that at first blush,

appear inconsistent with their allegations of abuse.

Like the overwhelming majority of other states, I believe that such evidence, when not used impermissibly to establish the abuse but, rather, as a viable tool to explain the sometimes confusing and commonly misunderstood behavioral patterns of children who may have been subjected to abuse, should be admissible.

CSAAS "first came to light in an article published in 1983 that described five (5) characteristics commonly observed in sexually abused children: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed, conflicted, and unconvincing disclosure; and (5) retraction [or recantation]." Elisabeth Trainor, J.D., ADMISSIBILITY OF EXPERT TESTIMONY ON CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME (CSAAS) IN CRIMINAL CASE, 85 A.L.R. 5th 595 (2001).

> There are six (6) categories of social science expert testimony that have developed and have regularly been proffered to support child witnesses in sexual abuse cases. The first category is "rehabilitative" testimony offered to explain the puzzling conduct of the child victim to meet a defense attack on the child's credibility. These behaviors have been termed as CSAAS. The second category is syndrome evidence, including CSAAS evidence, of supposed typical child victim behavior proffered, not to explain unusual conduct of the child, but to prove affirmatively that sexual abuse has occurred. The third category is a spin-off of the second with the expert testifying to typical behaviors of a child victim specifically related to the child victim in the case. The fourth is expert testimony that the child has in fact been abused, and the fifth is testimony that the child is credible. The final category involves profile testimony on the actual

sexual offender or alleged perpetrator of the abuse.

(*citing State v. J.Q.*, 130 N.J. 554, 617 A.2d 1196 (1993)).

This Court has dealt with all categories in one form or another, with a multitude of reasons for their rejection. *See Kurtz v. Commonwealth*, 172 S.W.3d 409, 413, 414 (Ky.2005) (habit and profile characteristics of perpetrators); *Miller v. Commonwealth*, 77 S.W.3d 566, 571, 572 (Ky.2002) (delayed reporting denied as habit evidence); *Newkirk v. Commonwealth*, 937 S.W.2d 690, 691–696 (Ky.1996) (considered psychiatric rebuttal evidence explaining in general terms child victims' recantation); *Hall v. Commonwealth*, 862 S.W.2d 321, 322, 323 (Ky.1993) (psychiatric testimony that child was sexually abused and was telling the truth); *Hellstrom v. Commonwealth*, 825 S.W.2d 612, 613, 614 (Ky.1992) (testimony on abuse and delayed disclosure invaded province of jury); *Dyer v. Commonwealth*, 816 S.W.2d 647, 652–654 (Ky.1991) (*overruled on other grounds by Baker v. Commonwealth*, 973 S.W.2d 54 (Ky.1998)) (perpetrator profile); *Brown v. Commonwealth*, 812 S.W.2d 502, 503, 504 (Ky.1991) (*overruled on other grounds by Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky.1997)) (use of CSAAS to prove abuse and child's subsequent behavior); *Mitchell v. Commonwealth*, 777 S.W.2d 930, 932, 933 (Ky.1989) (use of CSAAS for determination of guilt and perpetrator profile); *Hester v. Commonwealth*, 734 S.W.2d 457, 458 (Ky.1987) (recantation); *Lantrip v. Commonwealth*, 713 S.W.2d 816, 817 (Ky.1986) (use of CSAAS to prove abuse); *Bussey v. Commonwealth*, 697 S.W.2d 139, 140, 141 (Ky.1985) (use of CSAAS as proof of abuse and perpetrator profile). Although we have come close, *see Newkirk*, 937 S.W.2d at 690, we have yet to recognize the validity of CSAAS evidence of the first category of use (rehabili-

tation) when only offered "to explain the puzzling conduct of the child victim to meet a defense attack on the child's credibility." TRAINOR, *ADMISSIBILITY OF EXPERT TESTIMONY ON CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME (CSAAS) IN CRIMINAL CASE*, *supra*. I believe it's time we did.

"In general our reasons have been the lack of diagnostic reliability, the lack of general acceptance within the discipline from which such testimony emanates, and the overwhelmingly persuasive nature of such testimony effectively dominating the decision-making process, uniquely the function of the jury." *Newkirk*, 937 S.W.2d at 691. Interestingly enough, the closest we have come was our consideration of the commonality of recantation by abuse victims as analyzed in *Newkirk*, where the Court split 4–3. *Id.* at 696.

In *Newkirk*, the trial court allowed expert testimony regarding recantation "for the limited purpose of rebutting any attack on [the victim's] credibility based upon the recantation of her allegations of her abuse, by explaining in general terms why an alleged victim might recant." *Id.* at 697. Moreover, the evidence was admitted subject to a limiting admonition by the court; "[t]his witness is being called to testify for the limited purpose of explaining the psychological dynamics surrounding a recantation following an accusation of the sexual abuse. This evidence is not offered for the purpose of proving whether [the victim] was or was not sexually abused." *Id.* Recantation, delayed reporting, and inconsistent demeanors of child victims, all involve puzzling conduct of the child and, therefore, support a defense attack on the child's credibility. As was noted by the dissent in *Newkirk*:

> Kentucky remains as one of the few jurisdictions that still rejects all testimony regarding the phenomenon clinically identified and demonstrated as the Child Sexual Abuse Accommodation Syn-

drome[,] which provides jurors a psychological explanation for certain behavior in small children following sexual abuse. Such testimony is necessary because these children often exhibit conduct that is inconsistent with the jurors' life experiences or understanding of human nature in children.

*Id.* at 696 (Graves, J., dissenting). As the dissent also pointed out, "the recantation symptom is widely accepted and confirmed by credible studies at renowned research institutions by well credentialed experts." *Id.*

"Permitting [an] appellant to impeach the child victim's credibility on the basis of a previous recantation [, a delayed reporting of the incident or his demeanor,] without also allowing the Commonwealth to present testimony explaining the phenomenon of recantation gives the alleged perpetrator an unfair advantage to exploit the process of how some child sexual abuse victims respond to abuse." *Id.* at 698. (Barry Willett, Special Justice, dissenting).

As Special Justice Willett noted, in *Newkirk*:

> When a jury of lay adults, hearing the horrible details in a typical child sexual abuse case, is confronted with a child victim recanting his or her previous allegations of sexual abuse, it is understandable that they would tend to apply an adult standard to the child victim's behavior in an effort to understand what motivates the victim to recant his or her allegations. The reality of child sexual abuse is that children respond differently than do adults to both the abuse and the process of disclosing the abuse to the proper authorities.

*Id.* at 698–99. Moreover, as noted in *Wimberly v. Gatch*, 635 So.2d 206, 213 (La.1994):

> Adults frequently have preconceived ideas about how a traumatized person will react after infliction of the trauma.

The child victim of sexual abuse does not react to the situation according to adult concepts of self-determinism with autonomous, rational choices. In fact, their behavioral patterns vastly differ from adult expectations.

For these reasons, most states allow CSAAS "rehabilitative" testimony offered to explain the puzzling conduct of the victim in order to meet the defense's attack on the victim's credibility. *See United States v. Bighead*, 128 F.3d 1329, 1331 (9th Cir.1997) ("[T]estimony had significant probative value in that it rehabilitated (without vouching for) the victim's credibility after she was cross-examined about the reasons she delayed reporting and about the inconsistencies in her testimony."); *United States v. Two Elk*, 536 F.3d 890, 903, 904 (8th Cir.2008) ("In child sexual abuse cases, 'a qualified expert can inform the jury of characteristics in sexually abused children.'") (*quoting United States v. Eagle*, 515 F.3d 794, 800 (8th Cir.2008)); *Sexton v. State*, 529 So.2d 1041, 1049 (Ala.Crim.App.1988) ("The necessity for expert testimony increases if there are certain inferences made by the defense (such as the implication that the child's delay in reporting the abuse indicates fabrication), or certain unusual behavior of the child witness which should not be allowed to go unrebutted when there exists a recognized phenomenon which may explain it.") (*quoting Frye v. United States*, 293 F. 1013 (D.C.Cir.1923) (internal citation omitted)); *Bostic v. State*, 772 P.2d 1089, 1096 (Alaska Ct.App.1989) *reversed on other grounds by Bostic v. State*, 805 P.2d 344 (Alaska 1991) ("[E]xpert testimony generally describing characteristic behavior of sexually abused children could serve a legitimate purpose when offered to negate a claim or inference that the complaining witness' behavior in a given case was inconsistent with a truthful accusation of sexual abuse."); *State v.*

*Rojas*, 177 Ariz. 454, 868 P.2d 1037, 1042 (1993) ("[E]xpert testimony that helps jurors evaluate victims' credibility and explains why victims of sexual abuse may behave inconsistently is admissible."); *People v. Sandoval*, 164 Cal.App.4th 994, 79 Cal.Rptr.3d 634, 639 (2008) ("Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior."); *People v. Mintz*, 165 P.3d 829, 831 (Colo.Ct.App.2007) ("An expert may testify as to the typical demeanor and behavioral traits displayed by a sexually abused child."); *State v. Spigarolo*, 210 Conn. 359, 556 A.2d 112, 122 (1989) ("[T]he overwhelming majority of courts have held that, where the defendant has sought to impeach the testimony of the minor victim based on inconsistencies, partial disclosures, or recantations relating to the alleged incidents, the state may present expert opinion evidence that such behavior by minor sexual abuse victims is common."); *Wittrock v. State*, 630 A.2d 1103 (table) 1993 WL 307616, 2 (Del.Super.Ct.1993) (unpublished opinion) ("Expert testimony is admissible in such instances since it assists the trier of fact to evaluate the psychological dynamics and behavior patterns of alleged victims not within a layperson's common experience while also permitting the trier of fact to determine the credibility of the victim's and other witness' testimony"); *Mindombe v. United States*, 795 A.2d 39, 46 (D.C.2002) ("[E]xpert testimony is admissible in cases where the government successfully proffers that the facts and evidence to be presented at trial are likely to be inconsistent with a lay juror's expectations as to how a child sexual abuse victim should respond to such a traumatizing event."); *Ward v. State*, 519 So.2d 1082, 1084 (Fla.Dist.Ct.App.1988) ("The court determined that the testimony

would be helpful to the jury but prohibited the witness from commenting on the truthfulness of the child."); *McCoy v. State*, 278 Ga.App. 492, 629 S.E.2d 493, 494 (2006) ("Since '[l]aymen would not understand this syndrome without expert testimony, nor would they be likely to believe that a child who denied a sexual assault, or who was reluctant to discuss an assault, in fact had been assaulted,' the trial court did not err in permitting the expert witness to testify." (internal citation omitted)); *State v. Batangan*, 71 Haw. 552, 799 P.2d 48, 49 (1990) ("Thus, while expert testimony explaining 'seemingly bizarre' behavior of child sex abuse victims is helpful to the jury and should be admitted, conclusory opinions that abuse did occur and that the child victim's report of abuse is truthful and believable is of no assistance to the jury, and therefore, should not be admitted."); *People v. Hodor*, 341 Ill.App.3d 853, 275 Ill.Dec. 353, 792 N.E.2d 828, 860 (2003) (proper for witness to testify "concerning behavioral patterns typically manifested by victims of sexual abuse, or whether victim's behavior was consistent with recognized syndromes."); *Steward v. State*, 652 N.E.2d 490, 499 (Ind.1995) (Rehabilitative aspects of CSAAS "merely informs jurors that commonly held assumptions are not necessarily accurate and allows [the jury] to fairly judge credibility." (internal citation omitted)); *State v. Seevanhsa*, 495 N.W.2d 354, 357 (Iowa Ct. App.1992) (witness properly "testified on matters which explained relevant mental and psychological symptoms present in sexually abused children."); *State v. Reed*, 191 P.3d 341, 347 (Kan.Ct.App. 2008) (Witness "only gave her expert opinion as to why a hypothetical child might recant an initial allegation of sexual abuse. [Witness] did not render an opinion about [the child's] credibility."); *Gatch*, 635 So.2d at 215 ("Understanding that secrecy and that delayed, conflicted

and unconvincing disclosure are the norm and that immediate disclosure is atypical, in civil actions, the child victim's delayed or partial disclosure will not be countenanced, in law or equity, to victimize the child a second time."); *Commonwealth v. Deloney*, 59 Mass.App.Ct. 47, 794 N.E.2d 613, 620 (2003) ("It is within the trial judge's discretion, subject to proper limiting instructions, to admit expert testimony on the general behavioral characteristics of sexually abused children."); *State v. McCoy*, 400 N.W.2d 807, 810 (Minn.Ct. App.1987) (testimony on the typical behavioral characteristics of victim of child abuse was admissible); *Hall v. State*, 611 So.2d 915, 919 (Miss.1992) ("[T]estimony by an expert as to certain behavior common to sexually abused children is proper."); *State v. Price*, 165 S.W.3d 568, 572 (Mo.Ct.App.2005) ("General profile testimony describes a generalization of behaviors and other characteristics commonly found in victims of sexual abuse which is usually admissible."); *State v. Geyman*, 224 Mont. 194, 729 P.2d 475, 479 (1986) ("We hold that expert testimony is admissible for the purpose of helping the jury to assess the credibility of a child sexual assault victim."); *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197, 204 (1992) ("The reasoning for a rule allowing an expert to testify about sexual abuse in generalities ... is that '[f]ew jurors have sufficient familiarity with child sexual abuse to understand the dynamics of a sexually abusive relationship,' and 'the behavior exhibited by sexually abused children is often contrary to what most adults would expect.' ") *quoting People v. Nelson*, 203 Ill.App.3d 1038, 149 Ill.Dec. 161, 561 N.E.2d 439, 442 (1990) (internal citation omitted); *Smith v. State*, 100 Nev. 570, 688 P.2d 326, 327 (1984) ("It would be useful to the jury to know ... it is not uncommon for them to deny the act ever happened."); *J.Q.*, 130 N.J. at 580, 617 A.2d 1196 ("The court must also

explain to the jury that the expert's testimony is not intended to address the ultimate question of whether the victim's molestation claims are true and must admonish the jury not to use the testimony for that purpose."); *People v. Carroll*, 95 N.Y.2d 375, 718 N.Y.S.2d 10, 740 N.E.2d 1084, 1090 (2000) ("We have long held that expert testimony regarding [the] abused child syndrome or similar conditions may be admitted to explain behavior of a victim that might appear unusual or that jurors may not be expected to understand."); *State v. Richardson*, 112 N.C.App. 58, 65, 434 S.E.2d 657, 662 (1993) ("[T]estimony given in this case describing general symptoms and characteristics of sexually abused children to explain the victims' behavior is not error."); *State v. Stowers*, 81 Ohio St.3d 260, 690 N.E.2d 881, 883 (1998) ("An expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence."); *Davenport v. State*, 806 P.2d 655, 659 (Okla. Crim.App.1991) ("Numerous courts have allowed an expert to testify in rebuttal to explain delay in reporting as well as why a child recants."); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215, 1220–21 (1983) ("If a qualified expert offers to give testimony on whether the reaction of one child is similar to the reaction of most victims of familial child abuse, and if believed this would assist the jury in deciding whether a rape occurred, it may be admitted."); *Commonwealth v. Baldwin*, 348 Pa.Super. 368, 502 A.2d 253, 257 (1985) *disapproved by Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315, 317 (1988) ("In other words, so long as the expert does not render an opinion on the accuracy of the victim's recitation of facts, his or her general testimony on the dynamics of sexual abuse does not prejudice the jury."); *State v. Edelman*, 593 N.W.2d 419, 423 (S.D.1999) ("[W]e are also persuaded by the rationale of other courts who have allowed CSAAS testimony by an expert within proper limits."); *Gonzales v. State*, 4 S.W.3d 406, 417 (Tex.App.1999) ("Expert witness testimony that a child victim exhibits elements or characteristics that have been empirically shown to be common among sexually abused children is relevant and admissible."); *State v. Catsam*, 148 Vt. 366, 534 A.2d 184, 187 (1987) ("Given the demonstrated usefulness that such evidence can have in assisting the jury to assess the credibility of the complaining child witness, we join the majority of courts that have concluded that it is within the trial court's discretion to admit such evidence in appropriate circumstances."); *State v. Huntington*, 216 Wis.2d 671, 697, 575 N.W.2d 268 (1998) (testimony of expert concerning victim's delay in reporting and conflicting assertions was not inadmissible comment on victim's credibility); *Griego v. State*, 761 P.2d 973, 978 (Wyo.1988) (Evidence "helped to explain why the victim did not immediately flee the scene and report the incident to her parents or the authorities.").

> The expert testimony on why victims might recant or delay reporting [or initially omit some of the details,] is [only] being offered to rebut attacks on the victim's credibility. So long as the expert limits the testimony to general characteristics that would explain delays in reporting, recantations, and omission of details, the testimony will not substitute [the expert's] estimation of credibility for that of the jury. Rather, it is to provide a scientific perspective for the jury according to which it can evaluate the complainant's testimony for itself.

*State v. Foret*, 628 So.2d 1116, 1130 (La. 1993) (*citing* GOLDSTEIN, CREDIBILITY AND INCREDIBILITY: THE PSYCHIATRIC EXAMINATION OF THE COMPLAINING WITNESS, 137 Am.J.Psychia. 1238, 1240(1980)).

Thus, as Special Justice Willett noted in his dissenting opinion in *Newkirk,* 937 S.W.2d at 700:

> Expert testimony explaining the phenomenon of recantation [, delayed reporting and omission of details] by some victims of child sexual abuse should be admissible for the limited purpose of rebutting an attack on the child victim's credibility.... Any such testimony should be preceded by a limiting instruction to the effect that the expert's testimony is not intended and should not be used to determine whether the victim's sexual abuse allegation is true.

In this case, during cross-examination, the child victim's credibility was attacked on the revelation at trial of new details of the events which had never before been revealed to the police or social workers. Thereafter, the Commonwealth called Ms. Brown, the Director of Clinical Service for the Purchase Area Sexual Assault Center, who addressed the commonality of a child giving more details about the abuse following counseling. She was called to the stand again in rebuttal to address further issues created by the defense concerning that the child had delayed reporting the incident and appeared to be a "happy" child. Ms. Brown explained that this is not at all unusual, and is sometimes typical. On the other hand, on cross-examination, she admitted that just because a child appears happy does not mean she has been sexually abused. Clearly, Appellant's attack on the child victim's demeanor, initial omission of details and delayed reporting was intended to suggest fabrication according to one's usual life experiences. However, in cases of sexual abuse, established and acceptable scientific studies have shown that these events and appearances are common in children who are sexually abused. Thus, as knowledge of the commonality of these events in these situations "will assist the trier fact to understand the evidence [and] to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, [should be able to] testify thereto." KRE 702.

For these reasons, we should now break with precedent, joining the majority of jurisdictions in allowing the introduction of such evidence for rehabilitation purposes only and with an accompanying admonition limiting the use to such purpose. It is for this reason that I dissent from the majority's opinion on this issue.