Dustin Thomas BRADY, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2011–CA–001639–MR.

Court of Appeals of Kentucky.

March 8, 2013.

La Mer Kyle–Griffiths, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, James Havey, Assistant Attorney General, Frankfort, KY, for appellee.

Before MAZE, STUMBO AND THOMPSON, Judges.

## OPINION

MAZE, Judge:

Appellant, Dustin Brady (hereinafter "Brady"), appeals his sentence which the Nelson Circuit Court imposed following his plea of guilty to two counts of sexual abuse in the first degree. Upon our review of the record, we find that the trial court did not err in imposing the sentence in question. We therefore affirm.

## Background

On August 4, 2010, a Nelson County grand jury indicted Brady on two counts of sodomy in the first degree involving a victim under the age of twelve. The police report stated details of the two events which gave rise to the allegations. The report stated that the victim was unsure when the first instance of abuse occurred, but that it was "sometime between 2005 and 2006." The victim stated that the second instance occurred while his parents were vacationing in New York City over New Years 2006–2007. Based on the child's allegations and the resulting investigation, the indictment listed the date of the first count as "sometime between 2005 and 2006" and the date of the second count as "sometime in 2007." These dates indicated that Brady was between the ages of fifteen and seventeen at the time of the abuse.

The trial court arraigned Brady on September 2, 2010, and set a trial date of June 8, 2011. In the interim, plea negotiations were ongoing between Brady and the Commonwealth. On June 1, 2011, in response to Brady's request for a Bill of Particulars, the Commonwealth submitted its rendition of the facts of the case which included dates for the alleged crimes which were consistent with those given in the police report and indictments. This response further specified that the date of the second count was "sometime between the 29th day of December, 2006 and the 1st day of January, 2007."

The Commonwealth subsequently submitted its written offer on Brady's plea of guilty, offering to amend both counts of sodomy to two counts of sexual abuse in the first degree and recommending two five-year prison sentences to run concurrently. The Commonwealth further recommended that Brady be required to register as a sex offender for the remainder of his life and that he be subjected to five years' post-incarceration supervision upon his release from confinement. On June 6,

2011, Brady signed the agreement as offered by the Commonwealth and moved the court to amend his plea to "guilty." After reading the counts and dates provided in the indictments and the recommendations of the plea offer, as well as reminding Brady of his right to a trial, the trial court accepted Brady's guilty plea. The trial court set a sentencing hearing for the following August.

On July 12, 2011, Brady filed a motion requesting that the trial court sentence him according to KRS 532.043 as it was written prior to revisions which took effect in July 2006. Brady's motion argued that both counts of the indictment arose from events which occurred in 2005 and, therefore, the prior punishment provisions, requiring only a three-year period of post-incarceration supervision, applied to Brady. The revised sentencing requirements of KRS 532.043 imposed a mandatory five-year period of post-incarceration supervision following release.

At the sentencing hearing, after brief argument by the parties regarding Brady's motion, the trial court denied the motion, citing the retroactive nature of KRS 532.043, both prior to 2006 and as amended. Pursuant to the plea agreement, the trial court sentenced Brady to five years' imprisonment, required Brady to register as a sex offender for life and to be subject to five years' post-incarceration supervision. Brady's appeal of his sentence of post-incarceration supervision follows.

### Standard of Review

 We first review the trial court's findings of fact under the substantial evidence standard. *See Commonwealth v.*

*Harrelson,* 14 S.W.3d 541 (Ky.2000); *Morton v. Commonwealth,* 232 S.W.3d 566, 568 (Ky.App.2007). Thus, we will disturb the trial court's decision only "if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person." *Sherfey v. Sherfey,* 74 S.W.3d 777, 782 (Ky.App. 2002). Additionally, as Brady's guilty plea did not waive the jurisdictional issue of his sentence, we then conduct a *de novo* review of the trial court's application of the law to the established facts to determine whether its sentence was correct as a matter of law. *Morton* at 568–69. We therefore afford no deference to the trial court's application of the law to the established facts. *Id.* (*citing to Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky.App.1998)).

### Analysis

 Article I, Section 9 of the United States Constitution and Section 19 of the Kentucky Constitution prohibit the enactment of an *ex post facto* law.[1] The Supreme Courts of the United States and Kentucky have established that, to constitute an impermissible *ex post facto* law, a law must satisfy two dispositive elements. The conduct alleged to have violated the law must have occurred prior to the enactment of the law in question; and the law must disadvantage the person affected by it. *See Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *see also Purvis v. Commonwealth,* 14 S.W.3d 21 (Ky.2000). A law satisfies the first element of this test if it "changes the legal consequences of acts completed before its effective date." *Weaver* at 31, 101 S.Ct. 960.

---

1. An *ex post facto law* is a law passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed. In the criminal law context, an *ex post facto* law is one that inflicts a greater punishment than the law annexed to the crime when it was committed. *Blacks Law Dictionary,* (6th ed., 1990), p. 580.

KRS 532.043, as amended in July 2006, states, in relevant part,

1) In addition to the penalties authorized by law, any person convicted of, pleading guilty to, or entering an Alford plea to a felony offense under KRS Chapter 510 . . . shall be subject to a period of postincarceration supervision following release from:

 (a) Incarceration upon expiration of sentence; or

 (b) Completion of parole.

2) The period of postincarceration supervision shall be five (5) years.

3) During the period of postincarceration supervision, the defendant shall:

 (a) Be subject to all orders specified by the Department of Corrections; and

 (b) Comply with all education, treatment, testing, or combination thereof required by the Department of Corrections.

. . .

6) The provisions of this section shall apply only to persons convicted, pleading guilty, or entering an Alford plea after July 15, 1998.

KRS 532.043. Prior to July 2006, among other changes, subsection (2) of the statute required a period of "post-incarceration supervision" of only three years.

■ In denying Brady's motion, the trial court did not specifically address the dates of the conduct which gave rise to the criminal case against Brady. The court did, however, rely on subsection (6) of KRS 532.043 in stating that the statute was obviously intended to apply retroactively to those who, like Brady, plead guilty to an applicable crime. Though the issue of retroactivity does not form the main basis for Brady's appeal of his sentence, we find that the plain language of

KRS 532.043(6) supports the trial court's conclusion.

Moving to the true issue on appeal, Brady argues that, distinct from the issue of interpretation of KRS 532.043(6), the trial court's application of KRS 532.043(2) created an *ex post facto* law. In making his argument, Brady relies heavily on *Sanderson v. Commonwealth*, 291 S.W.3d 610 (Ky.2009). In *Sanderson*, the defendant was convicted and sentenced for sexual abuse of his step-child-abuse which ceased in February 2006. Included in his sentence was a five-year period of post-incarceration supervision, per the amended requirements of KRS 532.043. The Supreme Court reversed and remanded the trial court's sentence, finding that "[the defendant] was sentenced to five years of post-incarceration supervision, although the version of KRS 532.043 in effect at the time these offenses were allegedly committed (prior to July 2006) only allowed for a post-incarceration supervision of three years." *Sanderson* at 615. Brady contends the result in *Sanderson* is controlling of the present case.

■ The record before us demonstrates that the events which gave rise to at least one count of the indictment indubitably transpired after the effective date of the enhanced sentencing requirements under KRS 532.043. Despite Brady's claim that "[t]hroughout the pendency of [Brady]'s case, it was clear that the events . . . occurred in 2005," the original indictment, the police report and the Commonwealth's Response to Bill of Particulars unequivocally establish that the events surrounding Count 2 of the indictment occurred between December 29, 2006 and January 1, 2007—six months after the revised KRS 532.043 took effect. Consequently, that Brady's illegal conduct occurred entirely within 2005 is much less clear to this Court than it apparently is to Brady.

Furthermore, Brady's reliance on *Sanderson v. Commonwealth* is misplaced, as the illegal conduct in that case clearly occurred prior to July 12, 2006. The same is not true of Brady's case. Therefore, a sound legal basis, and certainly substantial evidence, existed to support the trial court's finding that the revised requirements of KRS 532.043 applied to Brady.

In sum, Brady fails to assert facts which would convince this Court that the events occurred entirely before July 12, 2006 rather than when and how they were alleged to have occurred in the record. The mere conclusory and self-serving statement that the events occurred in 2005, without some evidence to support it, is insufficient to establish that the events which gave rise to his plea of guilty occurred prior to the effective date of the revised KRS 532.043. Therefore, Brady's argument that his sentence of five years' post-incarceration supervision amounted to an *ex post facto* law lacks an essential element under *Weaver* and *Purvis,* and it must fail.

### Conclusion

We find that the conduct giving rise to at least one count of Brady's indictment occurred after the revised and enhanced sentencing provisions of KRS 532.043 took effect. Accordingly, the trial court properly sentenced Brady under those provisions. The order of the Nelson Circuit Court is affirmed.

ALL CONCUR.