Filed 6/10/16  P. v. Cruz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069905 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1201534) |
| ROGELIO CRUZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Mac R. Fisher, Judge.  Affirmed.

Torres & Torres and Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, Barry Carlton, Seth Friedman and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Rogelio Cruz guilty of one count of aggravated sexual assault of a child under age 14 by means of forcible sodomy (Pen. Code § 269, subd. (a)(3));[1] one count of sodomy with a child 10 years old or younger (§ 288.7, subd. (a)); and three counts of forcible lewd and lascivious conduct on a child under age 14 (§ 288, subd. (b)(1)).  Cruz admitted four prior prison terms, and the trial court sentenced him to a determinate prison term of 28 years and an indeterminate prison term of 25 years to life.

Cruz contends (1) the trial court violated his constitutional rights of confrontation and due process by declaring the victim to be an unavailable witness and by admitting the victim's preliminary hearing testimony; (2) the trial court improperly admitted evidence about Child Abuse Accommodation Syndrome (CAAS); (3) jury instruction CALCRIM No. 1193 improperly states the law regarding the jury's use of expert testimony on CAAS; (4) the prosecutor committed misconduct during closing argument when describing the presumption of innocence; and (5) the trial court erred in imposing a consecutive sentence for one of the forcible lewd act counts (count 3).  We conclude that Cruz's arguments lack merit, and accordingly we affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The victim in this case, John Doe,[2] was 10 years old at the time of the molestation.  Cruz dated Doe's mother (Mother) when Doe was nine and 10 years old,

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.
[2]     Consistent with the parties' practice in their briefing, we use a pseudonym to protect Doe's privacy.

2

and Cruz lived with Doe's family during the periods that he was out of custody. After a domestic violence incident by Cruz against Mother in late 2010, Cruz no longer lived with Doe's family and was again taken into custody.

Mother noticed that Doe's behavior started changing around the end of 2010. Doe cried often and was depressed, seemed to have low self-esteem, was very angry at Mother, and misbehaved at school. Mother repeatedly tried to get Doe to tell her what was wrong. In late January or early February 2011, Doe told Mother that he had been abused by someone while he was on his way to the liquor store, in a house that had three white pit bulls, a rocking chair and a smaller house in the backyard. Doe stated that the person tried to get him to drink something and then put his penis in Doe's anus. Mother called the police, but no suspect was ever identified.

On Mother's Day 2011, Doe was angry with Mother for her correspondence with Cruz in jail, and stated to her, "Are you that fucking stupid. It was [Cruz]."

Mother called the police in late June 2011 as a result of Doe's disclosure to her on Mother's Day and because Doe had tried to kill himself. During that time period, Doe's misbehavior at school also escalated, and he was suspended and eventually expelled.

Police officer Paul Miranda came to Doe's house on June 25, 2011, in response to Mother's call and interviewed Doe in an audio-recorded conversation. After first being reluctant to speak, Doe disclosed to Officer Miranda that Cruz had molested him on three occasions. The first incident was in a car parked behind a donut shop. Cruz tried to grab Doe's penis and tried to put a finger in Doe's anus. According to Doe, Cruz threatened to kill Doe and Doe's grandmother if Doe told anyone about the molestation. Doe told

3

Officer Miranda that the second incident took place in his bedroom. Cruz fondled Doe's penis and scrotum and tried to put his penis in Doe's anus, but Doe evaded him. The third incident Doe described to Officer Miranda took place in the living room. As Doe described, Cruz fondled Doe's penis, and Cruz's penis was hard and "kind of" went into Doe's anus.

After the interview with Officer Miranda, Doe was taken three times to speak with Detective Roberta Hopewell. During the first and second interviews, Doe was uncooperative, but he did provide some information. During the third interview, Doe was angry and said he was ashamed, but he did discuss the three incidents of molestation in greater detail. As Doe described to Detective Hopewell, during the first incident, which was behind the donut shop, Cruz grabbed Doe's penis, and Cruz tried to get Doe to suck Cruz's penis. Doe described the second incident as occurring in the living room. According to Doe, Cruz threw him down on the couch and tried to "hump" him, tried to get Doe to sit on his lap, and tried to pull down Doe's pants. Doe denied any penetration or ejaculation by Cruz. Doe told Detective Hopewell that the third incident occurred in Doe's bedroom. Cruz pulled down Doe's pants and also tried to make Doe suck Cruz's penis by putting him in a headlock.

In April 2012, a complaint was filed against Cruz alleging three counts of forcible lewd and lascivious conduct on a child under age 14. (§ 288, subd. (b)(1).)

At the preliminary hearing in October 2012 (when Doe was 12 years old), Doe testified about the three times that Cruz molested him when he was 10 years old. According to Doe's preliminary hearing testimony, the first incident occurred in a car

4

near the donut shop. Cruz touched Doe's penis and tried to pull Doe's head toward Cruz's penis. Doe screamed, struggled and managed to get free. Doe did not tell anyone because he was scared and Cruz threatened to kill Doe's grandmother if Doe disclosed the molestation.

As described in Doe's preliminary hearing testimony, the second incident of molestation occurred in the living room. Cruz grabbed Doe and pulled down both his own pants and Doe's pants while Doe struggled to get away. Cruz then inserted his penis into Doe's anus, stopping after "white" "sticky" stuff came out of Cruz's penis. After that incident, Doe's anus hurt and blood would come out of Doe's anus when he went to the bathroom.

The third incident Doe described in his preliminary hearing testimony occurred in Doe's bedroom. Cruz pulled down his own pants and Doe's pants and then started to insert his penis in Doe's anus, but stopped before doing so. During the same incident, Cruz put Doe in a headlock and pulled Doe's head toward his penis.

During cross-examination at the preliminary hearing, Doe explained that he did not tell Officer Miranda about everything because he "was embarrassed" and "felt nasty" about what happened. Doe was very upset during his preliminary hearing testimony, cried, asked to take a break several times, and vomited twice while on the stand.

After the preliminary hearing, Cruz was charged in an information with one count of aggravated sexual assault of a child under age 14 by means of forcible sodomy (§§ 269, subd. (a)(3), 286, subds. (c), (d)); one count of sodomy with a child 10 years old

5

or younger (§ 288.7, subd. (a)); and three counts of forcible lewd and lascivious conduct on a child under age 14 (§ 288, subd. (b)(1)).

After jury selection, the trial court became aware that Doe was unwilling to testify at trial. The trial court examined Doe as to his unwillingness to testify and also gave defense counsel the opportunity to do so. Doe, who was 13 years old at the time, stated that he did not want to testify because "I feel like dying" and "because [Cruz] ruined my life." Doe explained that he would not be able to testify even if the judge told him that he had to do so, because "it's hard for me to testify" and "it's humiliation." The trial court observed for the record that while Doe was on the stand, Doe was turned away from the seated area of the courtroom, was looking to the back wall with a hooded sweatshirt on, was bent over, and was sobbing throughout the entire course of questioning.

The trial court formally ordered Doe to testify, and Doe replied that he would not do so. Accordingly, the trial court found Doe to be in contempt of court. The trial court observed that pursuant to Code of Civil Procedure section 1219, subdivision (b) a victim of sexual assault cannot not be jailed after being found in contempt for refusing to testify about the assault, and that because Doe was a minor who did not support himself, a monetary fine would be ineffectual. However, the trial court directed the prosecutor to arrange for Doe to meet with his therapist later in the day to see if that meeting would change Doe's attitude toward testifying.

The next morning, Detective Hopewell reported to the trial court that she had driven Doe to see the therapist. On the way there, Doe stated that he wanted to die. After the meeting with the therapist, Doe told Detective Hopewell that he was still not willing

6

to testify. Detective Hopewell reported that she asked Doe "if there was anything we could do to get him to testify, and he said 'No.' "

Before making a ruling on Doe's unavailability as a witness, the trial court gave counsel the opportunity to comment. Defense counsel stated, "I believe the Court did ask yesterday a number of different ways and suggested different scenarios under which the child may feel more comfortable testifying. The only scenario we did not cover was whether [Doe] would be willing to testify via closed circuit in a different room without a jury present, without Mr. Cruz present, just the attorneys. I think that was the only avenue that the Court did not explore. And since there was no specific answer if [Doe] was even willing to do that, that's what I base my objection on."

The trial court then ruled that Doe was unavailable as a witness and, over defense counsel's objection, ordered that pursuant to Evidence Code section 1291, Doe's preliminary hearing testimony could be introduced at trial.

At trial, the evidence included Doe's preliminary hearing testimony, the recording of Doe's interview with Officer Miranda, and a description of the statements that Doe made to Detective Hopewell. Cruz testified in his own defense and denied having molested Doe. During the defense case, a witness testified about Doe's misbehavior at school, including evidence that his teachers had described Doe as dishonest.

The jury found Cruz guilty on all five counts. After Cruz admitted four prior prison terms, the trial court imposed a determinate prison term of 28 years and an indeterminate prison term of 25 years to life.

7

II.

DISCUSSION

A. *The Trial Court Did Not Violate Cruz's Confrontation Clause and Due Process Rights by Declaring Doe Unavailable and Admitting His Preliminary Hearing Testimony*

Cruz's first argument is that the trial court violated his constitutional rights of confrontation and due process by declaring Doe to be an unavailable witness and by admitting Doe's preliminary hearing testimony.

"A criminal defendant has the right, guaranteed by the confrontation clauses of both the federal and state Constitutions, to confront the prosecution's witnesses. (U.S. Const., 6th Amend.; Cal. Const., art. 1, § 15.) . . . [¶] Although important, the constitutional right of confrontation is not absolute. . . . 'Traditionally, there has been "an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant [and] which was subject to cross-examination . . . ." [Citations.]' [Citation.] Pursuant to this exception, the preliminary hearing testimony of an unavailable witness may be admitted at trial without violating a defendant's confrontation right." (*People v. Herrera* (2010) 49 Cal.4th 613, 620-621 (*Herrera*).)

Here, Cruz contends that Doe's preliminary hearing testimony was not properly admitted under the exception to the confrontation clause allowing for the admission of an unavailable witness's former testimony because (1) the trial court did not take all reasonable steps to ensure that Doe was actually unavailable to testify, as it did not inquire whether Doe might agree to testify by closed circuit television; and (2) even if

8

Doe was properly determined to be unavailable, Cruz's confrontation clause rights were violated because he did not have an adequate opportunity to cross examine Doe during the preliminary hearing.

      1.     *Doe Was Properly Found Unavailable to Testify*

Doe's preliminary hearing testimony was admitted because the trial court found that Doe was unavailable to testify pursuant to Evidence Code section 240, subdivision (a)(6). Under that provision, a witness is unavailable if he or she is "[p]ersistent in refusing to testify concerning the subject matter of the declarant's statement despite having been found in contempt for refusal to testify."

"The proponent of the evidence has the burden of showing by competent evidence that the witness is unavailable." (*People v. Smith* (2003) 30 Cal.4th 581, 609 (*Smith*).) We apply a substantial evidence review to any factual findings relevant to the unavailability determination (*Herrera*, *supra*, 49 Cal.4th at p. 628), but we independently review the trial court's determination that a sufficient showing of unavailability has been made "to justify an exception to the defendant's constitutionally guaranteed right of confrontation at trial." (*People v. Cromer* (2001) 24 Cal.4th 889, 901.)

"A witness who is absent from a trial is not 'unavailable' in the constitutional sense unless the prosecution has made a 'good faith effort' to obtain the witness's presence at the trial. . . . The United States Supreme Court has described the good faith requirement this way: 'The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness'[s] intervening death), "good faith" demands nothing of the prosecution. But if there is a possibility, albeit remote, that

9

affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." [Citation.] The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness.' " (*Herrera*, *supra*, 49 Cal.4th at p. 622.)

Further, when, as here, the prosecution has exercised due diligence to make a witness physically available in the courtroom, but *the witness nevertheless refuses to testify*, the witnesses is properly determined to be unavailable for the purpose of admitting the witness's prior testimony " 'if the court makes a finding of unavailability *only after taking reasonable steps to induce the witness to testify* unless it is obvious that such steps would be unavailing.' " (*Smith*, *supra*, 30 Cal.4th at p. 624, italics added.) "Trial courts 'do not have to take extreme actions before making a finding of unavailability.' " (*Ibid.*) Therefore, the specific question before us is whether the trial court's finding of Doe's unavailability was made after it took *reasonable* steps to induce Doe to testify.

As we have explained, the trial court took two specific actions in an attempt to induce Doe to testify, namely, (1) finding him in contempt of court; (2) arranging for him to meet with his therapist. Cruz argues that despite having done this, the trial court nevertheless did not take reasonable steps to induce Doe to testify because it did not ascertain whether Doe would agree to testify via closed circuit television outside the

presence of the jury and the defendant.[3]  Specifically, Cruz argues that "[i]t was not obvious that Doe would have rejected [a closed circuit television] option."  Cruz accordingly contends that "the failure to present this option to Doe meant that the trial court failed to pursue all reasonable options to ensure Doe testified before declaring him unavailable" and that Cruz's constitutional confrontation and due process rights were violated as a result.  As we will explain, we disagree.

Doe's comments gave no indication that his reluctance to testify stemmed from the prospect of being in the physical presence of Cruz or other courtroom participants during his testimony.  Instead, Doe explained that it was humiliating and embarrassing for him to talk about what Cruz did to him.  His comments and emotional demeanor made clear that it was the act of recalling and speaking about the molestation that would cause Doe to be emotionally devastated, regardless of where he would be physically located when testifying.  Further, although the trial court did not specifically explore with Doe whether any arrangements could be made so that he would be more comfortable testifying, Detective Hopewell reported to the court that she directly asked Doe "if there was anything we could do to get him to testify, and he said 'No.' "

---

3    Section 1347, subdivision (b) allows the trial court to order a minor age 13 or younger to testify by means of closed circuit television when certain prerequisites are met.  Specifically, as relevant here, the use of closed circuit television is available when the minor's testimony will involve a recitation of the facts of "[a]n alleged sexual offense committed on or with the minor" and "[t]estimony by the minor in the presence of the defendant would result in the child suffering serious emotional distress so that the child would be unavailable as a witness."  (§ 1347, subds. (b)(1)(A), (2)(A).)

11

Under the circumstances, we conclude that the trial court took reasonable steps to try to induce Doe to testify, regardless of the fact that it did not explore with Doe whether he would agree to testify via closed circuit television. Accordingly, the trial court properly determined that Doe was unavailable for purposes of admitting his preliminary hearing testimony at trial.

2. *Cruz Had an Adequate Opportunity to Cross Examine Doe at the Preliminary Hearing*

Next, Cruz argues that even if Doe was properly determined to be unavailable, the admission of Doe's preliminary hearing testimony violated Cruz's constitutional right to confrontation because Cruz did not have an adequate opportunity to cross-examine Doe at the preliminary hearing.

Under Evidence Code section 1291, subdivision (a)(2), when a witness is unavailable, the testimony of that witness at a former proceeding is admissible, despite the hearsay rule, if "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing." (Evid. Code, § 1291, subd.(a)(2).) "[W]hen the requirements of [Evidence Code] section 1291 are met, the admission of former testimony in evidence does not violate a defendant's constitutional right of confrontation." (*Herrera*, *supra*, 49 Cal.4th at p. 621.)

12

Cruz argues that contrary to the requirements of Evidence Code section 1291, he did not have "the right and opportunity to cross-examine the declarant with an interest and motive similar" to that which he had at trial. (Evid. Code, § 1291, subd. (a)(2).) Specifically, Cruz argues that at the outset of the preliminary hearing, he was charged in the complaint with three counts of lewd and lascivious conduct, but was not facing indeterminate life terms for the sodomy and aggravated sexual assault charges that were later added. As Cruz points out, those more serious charges were first identified during the course of the preliminary hearing, when, in the middle of Doe's testimony, the prosecutor notified the trial court that it intended to seek an order holding Cruz to answer on a charge of aggravated sexual assault (§ 269) and when near the end of the preliminary hearing, the prosecutor also requested that Cruz be held to answer on a count of sodomy (§ 288.7, subd. (a)). Cruz argues that defense counsel's cross-examination at the preliminary hearing "was to prevent those new charges from being added and to confirm Doe's statements. . . . Doe's credibility was secondary at that point." Cruz also argues that "[g]iven the lower standard of proof at the preliminary hearing stage, the interest and motive for cross-examination at that point was very different than it would have been at trial."

Our Supreme Court has repeatedly rejected similar arguments. Specifically, rejecting the argument that "a defendant has less incentive to cross-examine at the preliminary hearing than at trial," our Supreme Court explained that it has "routinely allowed admission of the preliminary hearing testimony of an unavailable witness." (*Smith, supra,* 30 Cal.4th at p. 611.) "Frequently, a defendant's motive for cross-

13

examining a witness during a preliminary hearing will differ from his or her motive for cross-examining that witness at trial. For the preliminary hearing testimony of an unavailable witness to be admissible at trial under Evidence Code section 1291, these motives need not be identical, only 'similar.' . . . Admission of the former testimony of an unavailable witness is permitted under Evidence Code section 1291 and does not offend the confrontation clauses of the federal or state Constitutions—not because the opportunity to cross-examine the witness at the preliminary hearing is considered an exact substitute for the right of cross-examination at trial . . . , but because the interests of justice are deemed served by a balancing of the defendant's right to effective cross-examination against the public's interest in effective prosecution." (*People v. Zapien* (1993) 4 Cal.4th 929, 975, citations omitted.) Although Cruz contends that he would have asked different questions of Doe during trial than he did at the preliminary hearing because his counsel was focused on different priorities at that time, "[t]his argument can always be made, as one can always think of additional questions. However, it is the opportunity and motive to cross-examine that matters, not the actual cross-examination. 'As long as defendant was given the opportunity for effective cross-examination, the statutory requirements were satisfied; the admissibility of [the preliminary hearing testimony] did not depend on whether defendant availed himself fully of that opportunity.' " (*Smith*, at pp. 611-612.)

Cruz also argues that because Doe's school records suggesting that Doe was dishonest were first made available after the preliminary hearing, Cruz did not have an adequate opportunity to attack Doe's credibility at the preliminary hearing. The argument

14

is not persuasive. "[A] defendant's interest and motive at a second proceeding is not dissimilar to his interest at a first proceeding within the meaning of Evidence Code section 1291, subdivision (a)(2), simply because events occurring after the first proceeding might have led counsel to alter the nature and scope of cross-examination of the witness in certain particulars. . . . 'Both the United States Supreme Court and this court have concluded that "when a defendant has had an opportunity to cross-examine a witness at the time of his or her prior testimony, that testimony is deemed sufficiently reliable to satisfy the confrontation requirement [citation], regardless whether *subsequent circumstances* bring into question the accuracy or the completeness of the earlier testimony." ' " (*People v. Harris* (2005) 37 Cal.4th 310, 333, italics added.) " '[A] defendant's interest and motive at a second proceeding is not dissimilar to his interest at a first proceeding within the meaning of Evidence Code section 1291, subdivision (a)(2), simply because events occurring *after* the first proceeding might have led counsel to alter the nature and scope of cross-examination of the witness in certain particulars.' " (*People v. Valencia* (2008) 43 Cal.4th 268, 293-294, italics added.)

Here, Cruz had an interest in attacking Doe's credibility throughout the proceedings, as the prosecution's case was consistently based on Doe's disclosure that he was molested by Cruz. Further, defense counsel took advantage of the opportunity to attack Doe's credibility during cross-examination by, among other things, pointing out the inconsistencies between Doe's preliminary hearing testimony and his statements in earlier interviews. Under these circumstances, we are satisfied that Cruz's lack of access to Doe's school records at the time of the preliminary hearing did not deprive Cruz of a

15

meaningful opportunity to cross-examine Doe. (See *People v. Gonzales* (2012) 54 Cal.4th 1234, 1262 [unavailable child witness's therapy records suggesting he was dishonest were not available at the preliminary hearing, but defendant still had an adequate opportunity for cross-examination at the preliminary hearing because defense counsel questioned the child's credibility by examining him about inconsistent statements].)

B.      *The Trial Court Did Not Err in Admitting Evidence of Child Abuse Accommodation Syndrome*

Over defense counsel's objection, the trial court admitted testimony by psychologist Jody Ward about CSAAS. As explained by Ward, CSAAS describes "a pattern of behaviors" that many children exhibit who have been sexually abused, and it is used by psychologists to "understand how children respond to sexual abuse" because "children respond to these events differently than do adults." According to Ward, CSAAS is sometimes helpful in understanding "why children keep things secret and why they do what they do in response to that abuse." The five categories identified in CSAAS, as Ward explained, are secrecy, helplessness, entrapment and accommodation, delayed unconvincing disclosure, and recantation or retraction. Ward testified about CSAAS generally, as she had no knowledge about the specifics of this case.

Cruz contends that the trial court improperly admitted the testimony about CSAAS because (1) it constituted scientific opinion evidence without reliable foundation; and (2) the evidence was more prejudicial than probative pursuant to Evidence Code section 352. Cruz further contends that because the evidence was unreliable and not probative, its

16

admission deprived him of due process of law.  We review the court's decision to admit the expert testimony for an abuse of discretion.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1147.)

> 1.  *The Evidence Was Not Required to be Excluded as an Unreliable Scientific Opinion*

Cruz's first contention is that expert testimony about CSAAS is inadmissible because it constitutes unreliable scientific opinion under the *Kelly/Frye* test.  (*People v. Kelly* (1976) 17 Cal.3d 24, 30; *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013, 1014.)

" 'Under *Kelly,* the proponent of evidence derived from a new scientific technique must establish that (1) the reliability of the new technique has gained general acceptance in the relevant scientific community, (2) the expert testifying to that effect is qualified to give an opinion on the subject, and (3) the correct scientific procedures were used.' " (*People v. Jones* (2013) 57 Cal.4th 899, 936.)  Under the *Kelly/Frye* test " '[r]eliability of the evidence is established by showing "the procedure has been generally accepted . . . in the scientific community in which it developed." ' "  (*People v. Harlan* (1990) 222 Cal.App.3d 439, 448 (*Harlan*).)

Cruz argues that *People v. Bledsoe* (1984) 36 Cal.3d 236 (*Bledsoe*) established that the *Kelly/Frye* test applies to testimony about CSAAS, but that the trial court here failed to apply that test to determine whether CSAAS was a reliable scientific theory. Cruz's argument fails because, as we will explain, it is well established that expert testimony describing CSAAS in a general sense *to dispel misconceptions about typical reactions to sexual abuse* is not subject to *Kelly/Frye*.

17

As Cruz points out, CSAAS is a similar type of psychological syndrome to rape trauma syndrome, and in *Bledsoe* our Supreme Court applied the *Kelly/Frye* test in ruling expert testimony that the victim was suffering from rape trauma syndrome was inadmissible for the purpose of establishing *that a rape had in fact occurred* based on the trauma that the victim was exhibiting. (*Bledsoe*, *supra*, 36 Cal.3d at p. 251.) Importantly, however, *Bledsoe* pointed out that evidence of rape trauma syndrome might properly be admitted for a *different* purpose, namely "*to rebut misconceptions* about the presumed behavior of rape victims" (*id.* at p. 299, italics added), such as the misconception that a victim's "delay in reporting the sexual assault . . . is inconsistent with her claim of having been raped." (*Id.* at p. 298.)

Later, in *People v. Stoll* (1989) 49 Cal.3d 1136, our Supreme Court explained that its application of the *Kelly/Frye* test in *Bledsoe* was not meant to establish that *Kelly/Frye* should always be used to determine whether any type of expert testimony about psychological syndromes was admissible. (*People v. Stoll*, at p. 1161.) Rejecting the argument that "use of 'syndrome' or 'profile' terminology by a mental health professional makes the diagnosis seem 'scientific' to a jury, and thus invokes *Kelly/Frye*," *Stoll* explained, "[w]e adopted no such per se rule in *Bledsoe*," and "[w]e are not persuaded that juries are incapable of evaluating properly presented references to psychological 'profiles' and 'syndromes.' " (*People v. Stoll*, at p. 1161, fn. 22.)

Case law decided after *Bledsoe* concludes that the admissibility of expert testimony about CSAAS is not governed by the *Kelly/Frye* test if the CSAAS evidence is admitted to rebut misconceptions about how children typically react to sexual abuse. In

18

*People v. Bowker* (1988) 203 Cal.App.3d 385, 393, the court concluded that based on *Bledsoe*, under *Kelly/Frye* "expert reference to CSAAS" is prohibited "for the purpose of demonstrating abuse," but can be used "for the limited purpose of disabusing the jury of misconceptions as to how child victims react to abuse." (*Bowker*, at p. 392.) In *Harlan*, *supra*, 222 Cal.App.3d at p. 449, after reviewing *Bledsoe* and *Stoll*, the court concluded that the *Kelly/Frye* test does not apply to expert testimony describing the typical reactions of child molestation victims. We follow those authorities in rejecting Cruz's contention that the trial court erred in admitting expert testimony about CSSAS without first determining its reliability under the *Kelly/Frye* test.

In arguing that CSAAS evidence should be excluded for all purposes, Cruz is asking us to reject the holdings of numerous California courts that CSAAS evidence is admissible to disabuse jurors of commonly held misconceptions about child sexual abuse. (See, e.g., *People v. Perez* (2010) 182 Cal.App.4th 231, 245; *People v. Wells* (2004) 118 Cal.App.4th 179, 187-188; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744–1745 (*Patino*); *People v. Housley* (1992) 6 Cal.App.4th 947, 955-956 (*Housley*); *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1383–1384; *People v. Stark* (1989) 213 Cal.App.3d 107, 116.) Significantly, our Supreme Court has cited this case law with approval, stating that in cases of alleged child sexual abuse, "expert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation. [Citations.]

19

'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior. . . . The great majority of courts approve such expert rebuttal testimony.' " (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301, fn. omitted (*McAlpin*) [discussing the admissibility of CSAAS evidence in the course of ruling on the admissibility of expert testimony about the failure of the *parents* of a child victim to report molestation].) More recently, in *People v. Brown* (2004) 33 Cal.4th 892, 906-907, our Supreme Court stated that expert testimony on CSAAS was similar to expert testimony on the behavior of domestic violence victims in response to abuse and, on that basis, among others, concluded that expert testimony on the behavior of such victims was admissible in domestic violence cases.

Cruz relies on several out-of-state cases to argue that CSAAS evidence should be determined to be unreliable and therefore inadmissible. (*Commonwealth v. Dunkle* (Pa. 1992) 602 A.2d 830, 834; *Bussey v. Commonwealth* (Ky. 1985) 697 S.W.2d 139, 141; *Newkirk v. Commonwealth* (Ky. 1996) 937 S.W.2d 690, 693-694; *Sanderson v. Commonwealth* (Ky. 2009) 291 S.W.3d 610, 614; *State v. Ballard* (Tenn. 1993) 855 S.W.2d 557, 562.) However, to the extent our Supreme Court approves the admissibility of CSAAS evidence to rebut general misconceptions about the behavior of child sexual abuse victims, we are required to follow that precedent and not look to the case law of other jurisdictions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

20

2. *The Evidence Was Not Required to be Excluded Under Evidence Code Section 352*

Cruz next argues that the trial court erred in denying his request to exclude Ward's testimony about CSAAS under Evidence Code section 352.

Evidence Code section 352, provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Premised on his contention that CSAAS evidence is scientifically unreliable under the *Kelly/Frye* test, Cruz contends that unreliable evidence has *no* probative value and thus should have been excluded under Evidence Code section 352.

We reject Cruz's argument because, as we have explained, the *Kelly/Frye* test does not apply and Cruz accordingly has not established that the CSAAS evidence is without probative value. Indeed, our Supreme Court specifically observed that expert testimony about CSAAS has significant probative value in a case involving allegations of child molestation, as " '[s]uch expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' " (*McAlpin, supra*, 53 Cal.3d at p. 1300.)

Moreover, any possible prejudice to Cruz from the jury impermissibly using Ward's testimony about CSAAS as evidence that Cruz molested Doe was obviated by trial court's instruction to the jury that "Dr. Ward's testimony about [CSAAS] is not

21

evidence that the defendant committed any of the crimes charged against him."
(CALCRIM No. 1193, as modified.) Such an instruction is required by case law and was given here because it prevents the potential for misuse of CSAAS evidence. (*Housley*, *supra*, 6 Cal.App.4th at p. 959.)

3. *Cruz Has Not Established Any Violation of His Rights to Due Process*

In an argument we understand to be premised on his contention that the CSSAS evidence was scientifically unreliable and therefore irrelevant, Cruz argues that "presentation of this irrelevant and inflammatory testimony to the jury violated [Cruz's] right to due process."

We reject this argument because its premise fails. As we have explained, Cruz has not established that the CSAAS evidence was scientifically unreliable and therefore irrelevant.

Further, case law specifically rejects the contention that the admission of CSAAS evidence, in itself, violates a defendant's right to due process. (*Patino, supra,* 26 Cal.App.4th at p. 1747 [observing that "[t]he United States Supreme Court has held the admission of relevant evidence of the battered child syndrome does not violate the due process clause of the Fourteenth Amendment," and that "[b]attered child syndrome evidence is analogous to CSAAS evidence" so that "introduction of CSAAS testimony does not by itself deny appellant due process"].) We see no reason to depart from that authority.

C.     *The Trial Court Did Not Err in Instructing With CALCRIM No. 1193*

Cruz next argues that the trial court erred in instructing the jurors with CALCRIM

No. 1193 about the limits on their use of the CSAAS evidence.  He contends that the

instruction, as approved by the Judicial Council of California, is contrary to law.

"[A]ssertions of instructional error are reviewed de novo."  (*People v. Shaw* (2002) 97

Cal.App.4th 833, 838.)[4]

Following the text of CALCRIM No. 1193, the trial court instructed the jury,

> "You have heard testimony from Dr. Jod[y] Ward regarding child sexual abuse accommodation syndrome.
>
> "Dr. Ward's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.
>
> "You may consider this evidence only in deciding whether or not [Doe's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of his testimony."

As Cruz correctly points out, "[i]t is beyond dispute that CSAAS testimony is

inadmissible *to prove that a molestation actually occurred*."  (*Patino*, *supra*, 26

Cal.App.4th at p. 1744, italics added.)  Therefore, case law establishes that "in all cases in

which an expert is called to testify regarding CSAAS . . . the jury must sua sponte be

_____

4     Because Cruz did not object to CALCRIM No. 1193 at trial, he has forfeited the claim on appeal unless the instructional error amounted to an incorrect statement of law that affected his substantial rights.  (§ 1259; *People v. Battle* (2011) 198 Cal.App.4th 50, 64.)  "In this regard, '[t]he cases equate "substantial rights" with reversible error' under the test stated in *People v. Watson* (1956) 46 Cal.2d 818."  (*People v. Felix* (2008) 160 Cal.App.4th 849, 857.)  As we will conclude that Cruz's claim of instructional error lacks substantive merit, Cruz has not identified any impact on his substantial rights.

instructed that (1) such evidence is admissible solely for the purpose of showing the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested; and (2) the expert's testimony is not intended and *should not be used to determine whether the victim's molestation claim is true*." (*Housley*, *supra*, 6 Cal.App.4th at p. 959, italics added.)

Cruz contends that CALCRIM No. 1193 contravenes this authority because it purportedly instructs the jury that it may use the CSAAS evidence to decide whether the victim's claim of molestation is true. Specifically, Cruz focuses on the last phrase in the instruction, which states that the jury may use the CSAAS evidence "in evaluating the believability of [Doe's] testimony." As Cruz contends, "[b]y allowing the jurors to consider the CSAAS testimony in evaluating the complaining witness's credibility, the CALCRIM No. 1193 instruction . . . permits the jurors to consider this expert testimony as supportive of the truth of the allegations made against the defendant." We disagree.

Cruz's argument improperly conflates two distinct types of evidence: (1) evidence relevant to a victim's credibility; and (2) evidence that the defendant committed the offense. Case law discussing the admissibility of CSAAS evidence consistently recognizes that the two types of evidence are different. For example, *Housley* explains that although CSSAS evidence cannot be used to prove that molestation occurred, such evidence was "properly admitted" in that case "to rehabilitate [the victim's] credibility and to explain the pressures that sometimes cause molestation victims to falsely recant their claims of abuse." (*Housley*, *supra*, 6 Cal.App.4th at p. 956). Similarly, *Bowker* explains that although CSAAS evidence may not be "used to determine whether the

24

victim's molestation claim is true," it may be used "to rebut defense attacks on the victim's credibility." (*Bowker*, *supra*, 203 Cal.App.3d at p. 394.) Most significantly, our Supreme Court expressly stated that although CSAAS evidence is "not admissible to prove that the complaining witness has in fact been sexually abused," "it is admissible to rehabilitate such witness's credibility." (*McAlpin*, *supra*, 53 Cal.3d at p. 1300.) In light of these authorities — each of which recognizes that evidence of a witness's credibility is different from evidence that the molestation occurred — there is no merit to Cruz's contention that by mentioning the jury's use of CSAAS evidence "in evaluating the believability of [the victim's] testimony," CALCRIM No. 1193 impermissibly instructs the jury that it may use CSAAS evidence as evidence that Cruz committed the molestation.

D.    *The Prosecutorial Misconduct Argument Is Not Preserved for Appeal*

Cruz contends that the prosecutor committed misconduct during closing argument when discussing the presumption of innocence. Specifically, the prosecutor made the following statement during rebuttal closing argument:

> "Now, during jury selection, I think it was clear to everyone . . . that we were trying to make sure that this was a fair trial, and that the defendant got a fair trial. I think everyone would agree with that.
>
> "And it should be fair. It should be fair for both sides. For the defendant. It's my burden, and I told you I accept that burden. And it starts with the presumption of innocence.
>
> "*Once you go back there, that presumption leaves. You deliberate.* And I'm confident that you're going to find him guilty. But he starts with the presumption of innocence. The rules are set up to favor him." (Italics added.)

Cruz argues that by stating that the presumption of innocence leaves once the jurors go into the deliberation room, the prosecutor misstated the law and misled the jury about a defendant's presumption of innocence until found guilty.

Prosecutorial misconduct exists " 'under state law only if it involves " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " (*People v. Earp* (1999) 20 Cal.4th 826, 858.)  In more extreme cases, a defendant's federal due process rights are violated when a prosecutor's improper remark " ' " 'infect[s] the trial with unfairness,' " ' " making it fundamentally unfair.  (*Ibid.*)  However, " '[t]o preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition . . . .' " (*Ibid.*)  As an exception to this rule, "[a] defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile.  [Citations.]  In addition, failure to request the jury be admonished does not forfeit the issue for appeal if ' "an admonition would not have cured the harm caused by the misconduct." ' " (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

Here, defense counsel did not object to the statement that Cruz now claims to constitute prosecutorial misconduct, and nothing in the record suggests that an objection would have been futile.  Further, if defense counsel had objected and asked for an admonition, the jury could have been admonished to disregard the prosecutor's alleged misstatement.  Accordingly, we conclude that because defense counsel did not object to the statements that Cruz now assigns as prosecutorial misconduct, the issue is not preserved for appeal.

E.      *The Trial Court Did Not Err in Imposing a Mandatory Consecutive Sentence for Count 3*

The final issue is whether the trial court erred in imposing a consecutive sentence for the forcible lewd act conviction in count 3.

In imposing a determinate term of 28 years, the court concluded that the eight-year upper term sentence for each of the three lewd act counts (counts 3, 4 and 5) (§ 288, subd. (b)) should run *consecutively* to each other and *consecutively* to the indeterminate term imposed for the sodomy counts (counts 1 and 2).

Under section 667.6, subdivision (d), a court is *required* to impose consecutive sentences for certain sex offense convictions (including, as relevant here convictions for the commission of forcible lewd acts (§ 288, subd. (b)) when "the crimes involve separate victims or involve the same victim on separate occasions." (§ 667.6, subds. (d), (e)). In contrast, when the crimes do not involve separate victims or the same victim on separate occasions, section 667.6 subdivision (c) gives a trial court the *discretion* to impose a consecutive sentence if it chooses to do so.

Here, although the trial court was not completely clear, it appears that the court believed that the sentences for count 3, 4 and 5 were *required* by law to be served consecutively to the sentence for the sodomy counts pursuant to section 667.6, subdivision (d) because they involved the same victim on separate occasions. Specifically, the court appeared to indicate that consecutive sentences were required by stating that as to the section 288, subdivision (b)(1) convictions, "my understanding of

27

the law is that each would be full and consecutive to each other . . . . *by law*." (Emphasis added.)

Assuming that the trial court believed consecutive sentencing was *mandatory*, Cruz contends that the trial court erred as to count 3 because the lewd act in count 3 did not occur on a separate occasion from the sodomy charged in counts 1 and 2.

To analyze the argument, we must look more closely at the conduct that was charged in counts 1, 2 and 3. The prosecutor stated at trial that counts 1, 2, and 3 all occurred in the living room on a single day. Specifically, counts 1 and 2 were alternate charges for the same conduct of anal penetration that Doe described as having occurred in the living room. Count 1 charged aggravated sexual assault of a child under age 14 by means of forcible sodomy based on that conduct (§§ 269, subd. (a)(3), 286 subds. (c),(d)), and count 2 charged sodomy with a child 10 years old or younger based on that same conduct (§ 288.7, subd. (a)).[5] Regarding count 3, the prosecutor explained that it was based on *other* forcible lewd acts that occurred in the living room on the same day as the anal penetration. During closing argument the prosecutor described those lewd acts as "touching." At sentencing, the prosecutor explained that the lewd acts charged in count 3 consisted of the "forced foreplay" and the fondling of Doe's penis that preceded the anal penetration.[6]

---

[5]  At sentencing, because counts 1 and 2 were based on the same conduct, the trial court stayed the sentence on count 1 pursuant to section 654.

[6]  Count 4 involved the conduct at the donut shop, and count 5 involved the conduct in the bedroom.

Cruz contends that based on the evidence presented at trial, the fondling of Doe's penis and other lewd acts that preceded the anal penetration did not occur on a separate occasion. To evaluate this argument, we turn first to the statutory language. Section 667.6, subdivision (d) states that "[i]n determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

Case law provides additional clarification that separate occasions of sexual assault may take place during the same encounter, as long as the evidence supports a finding that the defendant had a reasonable opportunity to reflect and then resumed his actions. As our Supreme Court stated in *People v. Jones* (2001) 25 Cal.4th 98, 104, "[u]nder the broad standard established by . . . section 667.6, subdivision (d), the Courts of Appeal have not required a break of any specific duration or any change in physical location" for a finding that sexual assaults occurring during a continuous encounter with a victim constituted separate occasions. Thus, for example, *People v. Irvin* (1996) 43 Cal.App.4th 1063, 1070 stated that "a finding of 'separate occasions' " does not "require[ ] a change of location or an obvious break in a perpetrator's behavior." Similarly, *People v. Plaza* (1995) 41 Cal.App.4th 377 concluded that three counts of forcible oral copulation, one

count of rape and one count of forcible vaginal penetration with a foreign object that all occurred during the same encounter in the victim's apartment, with no break in the defendant's control over the victim, were all separate occasions for the purposes of section 667.6. (*Plaza,* at pp. 381, 385.) Each case depends on unique facts, however, and in some contexts courts conclude that the evidence does not support a finding that the defendant had a reasonable opportunity to reflect between sex acts that were committed in quick succession. (*People v. Pena* (1992) 7 Cal.App.4th 1294, 1316; *People v. Corona* (1988) 206 Cal.App.3d 13, 18.)

"Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

Cruz argues that "there was no appreciable interval between the penetration and touching" based on any of the evidence at trial, and that Cruz "likely touched Doe's penis during the course of the sodomy." As we will explain, we disagree.

During Doe's preliminary hearing testimony, he did not recount specific details of what happened in the living room apart from the sodomy itself, other than stating that Cruz grabbed him, Doe struggled to get away, and Cruz pulled down both his and Doe's pants. However, Doe provided additional details of the living room incident during his interview with Officer Miranda. Doe told Officer Miranda that during the living room incident, Cruz was "kind of messing with" him and fondled Doe's penis. Because the act

30

of fondling a victim's penis is a separate type of sexual activity from sodomizing a victim, and because Doe described the incident as including Doe's struggle to get away from Cruz, the trial court could reasonably find that the fondling of Doe's penis did not take place simultaneously with the sodomy and that Cruz had an opportunity to reflect on his actions between the act of fondling Doe's penis and gaining control over Doe to commit the sodomy. Accordingly, the trial court properly concluded that the lewd act that formed the basis of count 3 and the sodomy that formed the basis of counts 1 and 2 took place on separate occasions within the meaning of section 667.6, subdivision (d), subjecting Cruz to a mandatory consecutive sentence for count 3.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

PRAGER, J.*

---

*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

31